Irving Lang, J.
In this case of first impression, defendants, the corporate owner of a movie theatre and four of his employees, move to quash a subpoena duces tecum served upon the corporate defendant for a motion picture film and to suppress its use as evidence.[1]
Defendants are charged with violation of article 235 of the Penal Law of the State of New York in that they allegedly (1) promoted and possessed with intent to promote obscene materials, and (2) produced, promoted and directed an obscene performance.
The motion picture films exhibited at corporate defendant’s theatre had been seized pursuant to a search warrant issued by a Judge of the Criminal Court of the City of New York upon the affidavit of a police officer who described with particularity the nature of the films and alleged probable cause to believe that they were obscene. The films were not viewed by the Judge prior to his issuance of the warrant.
*374 Defendant corporation moved in the Federal court for the return of the seized films. United States District Court Judge Edward Weinfeld, in P.A.J. Corp. v. Murphy (320 F. Supp. 704 [S.D.N.Y. 1970]), held that the seizure was illegal because there had not been a prior adversary hearing on the issue of obscenity as mandated by the United States Court of Appeals for the Second Circuit in Bethview Amusement Corp. v. Cahn, (416 F. 2d 410 [2d Cir., 1969], cert. den. 397 U. S. 920 [1970]).
The prosecution, having complied with Judge Weinfeed’s order to return the seized films, now seeks to obtain them for use .as evidence in the State obscenity trial by means, óf a subpoena duces tecum. Defendants argue that the film, initially obtained in violation of the required Bethview hearing, is so tainted thereby that it is beyond the reach of any further legal process- and must be suppressed as evidence.
In his opinion, Judge Weiftfeld, in granting the motion, did so “ without prejudice to defendants [the prosecution] proceeding in accordance with the requirements of Bethview ” (320 F. Supp. at p. 705). In- Bethview, the court held that the First Amendment as applied to the States by the Fourteenth Amendment required an adversary hearing before the seizure of any publicly exhibited film could be made. However, that court felt constrained to respond to the prosecution’s argument that such a requirement would make it virtually impossible to effectively prosecute obscenity cases with respect to films since unlike the situation with respect to a book or magazine the prosecution would be hard put to obtain the film for an adversary proceeding. However, in response the Circuit Court suggested that a court issue a directive “ that a print be made reasonably available to the prosecution; a subpoena duces tecum can be used ” (emphasis supplied) (416 F. 2d, at p. 412). This ruling in Bethview was consistent with the rulings in other circuits (Metzger v. Pearcy, 393 F. 2d 202 [7th Cir., 1968] ; United States v. Alexander, 428 F. 2d 1169 [8th Cir., 1970]). Further, the identical issue and arguments of Bethview were again presented to the Second Circuit in Astro Cinema v. Mackell (422 F. 2d 293 [2d Cir., 1970]). The court there stated (pp. 296-297) that: “ While the weight of logic and authority clearly direct us to order return of the film to those from whom it was seized, the State argues that to do so would be to deprive it of the opportunity to introduce the film into evidence, for the plaintiffs may now destroy the film, remove it from the jurisdiction, or edit those portions deemed obscene by the -State. Without issuing an advisory opinion on what remedies the State may pursue to avoid this dilemma *375 [emphasis supplied], we note only that prior.-opinions have suggested several possibilities, leaving their- resolution for an actual, controversy [emphasis supplied]. In Bethview we mentioned an ex parte restraining order or subpoena duces tecum, Metzger [393 F. 2d 202 (7th Cir., 1968)] and Tyrone [410 F. 2d 639 (4th Cir., 1969)] permitted an order allowing the State to demand a copy of the film to aid in the preparation and trial of its case. With these alternatives available the State’s claim that we have left it with no means to enforce its obscenity statutes is barren. Indeed, should it be determined that these procedures are proper, they might provide a reasonable and non-burdensome reconciliation of the interest in allowing the exercise of free speech with the aim of punishing those who abuse it. ”
Defendant disputes the propriety of the suggestions and/or directions of the above-mentioned Circuit Court cases, pointing out that they are merely “ dictum ”. Defendant maintains that the prosecution having violated both the defendant’s First and Fourth Amendment rights cannot constitutionally obtain these films by means of a subpoena duces tecum.
Courts and commentators disagree as to whether or not the seizure of printed material and films should be handled as a First Amendment question or a Fourth Amendment question or as a result of the interaction between these two constitutional safeguards. (See “The Prior Adversary Hearing: Solution to Procedural Due Process Problems in Obscenity Seizures? ”, 46 N.Y.U. L. Rev., 80-119.) For example, does the requirement of a prior adversary hearing go strictly to the protection of the First Amendment and is it not to be confused with the Fourth Amendment prohibitions against unreasonable search and seizure ? It might be argued that the adversary hearing is a First Amendment requirement necessitated by the “ chilling effect ” on free speech and press of the seizure without such a hearing. On the other hand, it might be argued that, because of its First Amendment implications, due process engrafts an additional probable cause requirement under the Fourth Amendment necessitating such a hearing.[2]
But whether or not rights in this area are protected by the First Amendment standing by itself, or through the Fourth Amendment, certain principles appear to be clear. The Fourth Amendment primarily protects the right of privacy of the individual (Warden v. Hayden, 387 U. S. 294, 304). The First *376 Amendment protects not only the right of an individual to publish, expose and disclose, but also the right of the public to see and to know.
Thus, our highest courts have consistently pointed out the special nature and special protections to be considered when free speech and press are involved with respect to seizures. Even when clear Fourth Amendment violations are involved, the trend has been for our highest court to emphasize First Amendment implications rather than traditional Fourth Amendment requirements..
In the leading case of Marcus v. Search Warrant (367 U. S. 717 [1961]), Justice Brennan struck down an overbroad warrant issued for the seizure of thousands of copies of some 280 publilications pursuant to a vague ex parte warrant. While the warrants were obviously defective under the Fourth Amendment the court did not refer to the case of Mapp v. Ohio (367 U. S. 643 [1961]), which had recently been decided by that court but chose to emphasize the inadequacy of Missouri’s procedure “in the context of the protections for free speech and press assured against state abridgement by the Fourteenth Amendment ’ ’ (367 U. S., at p. 723). Again, in A Quantity of Books v. Kansas (378 U. S. 205 [1964]), in striking down an ex parte warrant issued without an adversary hearing the court pointed out that such seizures pose problems not raised by warrants to seize such things as gambling implements and intoxicating liquors.
The special care which must be exercised with respect to warrants for publications and films was re-emphasized by the Supreme Court in Lee Art Theatre v. Virginia (392 U. S. 636 [1968]). In that case the Supreme Court struck down a warrant issued by a Justice of the Peace on the basis of an affidavit of a police officer which stated only the titles of the motion pictures and that the officer had determined from personal observations of them that the films were obscene. The court specifically declined to decide whether the Justice of the Peace should have viewed the motion picture before issuing the warrant. Such conclusory affidavits had been recently condemned as Fourth Amendment violations by that court in Aguilar v. Texas (378 U. S. 108), but without citing Aguilar the court asserted, citing Marcus, that the procedure under which a warrant was issued solely upon conclusory assertions of the police officer without any inquiry into the factual basis for the officer’s conclusion was not one designed to focus searchingly on the question of obscenity and therefore fell short of constitutional requirements demanding sensitivity to freedom of expression;
*377 Granting the sensitivity needed when First Amendment questions are involved, the question still remains as to whether either the Fourth or the First Amendment “ taint ” in the instant case is sufficient to quash the subpoena against the defendant corporation and to suppress the film as evidence.
Assuming that there was a Fourth Amendment violation, it is clear that any taint has been clearly attenuated. In Silverthorne Lbr. Co. v. United States (251 U. S. 385, 392), Mr. Justice Holmes wrote, “ The essence of a provision forbidding the aquisition of evidence in a certain way is that not merely evidence so acquired shall not be used before the Court but that it shall not be used at all. Of course this does not mean that the facts thus obtained become sacred and inaccessible. [Emphasis supplied.] If knowledge of them is gained from an independent source they may be proved like any others, but the knowledge gained by the Government’s own wrong cannot be used by it ”. In this case the officers viewed the film; it was publicly displayed in a theatre where any adult could see it upon payment of an admission. The seizure of the film without the adversary hearing brought no new facts or evidence to light which aided the prosecution as to its existence or contents. (See People v. Mendez, 28 N Y 2d 94 ; People v. Scharfstein, 52 Misc 2d 976.)
Likewise if we assume that a First Amendment violation was involved the remedy is clearly not suppression — for the rationale of the prior adversary hearing requirement is not suppression, but exposure — the right of the public to see the film prior to a judicial determination of obscenity after an adversary hearing. The rationale underlying the return of films seized without an adversary hearing is not to permit the defendants to destroy or conceal the material, rather it is to emphasize the public’s right to see and the defendants’ right to show such films prior to a judicial examination of obscenity. It would be the epitome of logical inconsistency to maintain that the First Amendment protects the right of a person to show films and the right of the public to see films but prohibits that right to Judges and juries.
The instant motion to suppress relies principally upon Carroll v. Orlando (311 F. Supp. 967 [M.D. Fla., 1970]) ; Abrams & Parisi v. Canale, 309 F. Supp. 1360 [W.D. Tenn., 1969]) ; Central Agency v. Brown (306 F. Supp. 502 [N.D. Ga., 1969]) ; and Ledesma v. Perez (304 F. Supp. 662 [E.D. La., 1969], vacated solely on other grounds 401 U. S. 82), all holding, inter alia, that a prior adversary hearing is necessary for the seizure of a film alleged to be obscene. Further language in Carroll (p. 970), Central Agency (p. 504), and Ledesma (pp. 667-670) ordered *378 the films suppressed as evidence. I do not, however, read these cases as mandating defendants ’ requested relief. In these cases the films suppressed were those actually seized without any intervening return and subsequent lawful taking. (See Lee Art, supra.) Moreover the courts in Carroll and Central Agency (supra) refused to grant injunctive relief against future prosecutions; and Abrams (supra, p, 1363), which contains no language pertaining to suppression, specifically states that “ an order requiring a return of the film would not amount to. an injunction against the criminal prosecution ”. In any event, if these cases cited by the defense are inconsistent with Bethview and Astro (supra), I believe that the latter cases are correct, providing a reasonable balance between First Amendment guarantees and the obligation of Government to enforce its laws.
Since the subpoena duces tecum in the instant case was issued against a corporation, no Fifth Amendment questions arise (Wilson v. United States, 221 U. S. 361 [1911]).
The motion to quash the subpoena and suppress the evidence is denied.

. The People have raised no question as to the “ standing ” of the noncorporate movants to join in this motion. In view of our disposition on the merits, there is no need for the court to swa sponte raise and decide this question.

. It is clear that many courts are reluctant to leave to the police, indeed even to juries, the question of obscenity of a film or publication (United States v. 35 MM. Motion Picture Film, etc., 432 F. 2d 705 [2d Cir., 1970]).