Alexander W. Kramer, J.
The defendant was arrested and charged with promoting obscenity, a violation of subdivision 1 of section 235.05 of the Penal Law. A search warrant had been issued and pursuant to it police seized some 17,500 copies of *527 allegedly obscene materials. Overstock Book Co., the corporation of which the defendant is the president, then brought a civil suit in the United States District Court seeking among other relief the return of the seized material. The decision in that case (Overstock Book Co. v. Barry, 305 F. Supp. 842, affd. 436 F. 2d 1289) ordered the return of the seized material but provided the defendant (government) the right to seek a restraining order unless the parties could stipulate as to the material necessary for the prosecution which could be retained. The court cited Bethview Amusement Corp. v. Calm (416 F. 2d 410) in support of the position that copies could later be obtained by the People for use on trial. Apparently no stipulation was entered, and, in final order of that court entered on February 17,1970, the defendant was restrained from removing one copy of each of the seized books and magazines from the place of business.
The District Attorney now seeks to obtain this material for use in preparation and trial.
The defendant makes the instant motion to quash the subpoena on the grounds that it is unauthorized as issued, an abuse of process, a denial of due process, and a violation of the Fifth Amendment rights of the defendant.
In the defendant’s affidavit in support of his motion he merely states that he believes the subpoena is not proper and is violative of his Fifth Amendment rights. Such a conclusory statement is hardly sufficient.
The affirmation of defendant’s attorney makes, in essence, the same conclusory statements. It is claimed that the .subpoena duces tecum is being used as an unauthorized discovery procedure; is in violation of the defendant’s right to due process under the CPL; is an abusive process; and that it violates the Fifth Amendment rights of the corporation, the corporate employees, and the defendant.
The defendant’s first argument is that this is an unauthorized discovery proceeding. As defendant points out, the District Attorney is not entitled to a discovery proceeding. If the subpoena were issued to produce the property at the District Attorney’s office the result would clearly be an unauthorized disclosure. But the subpoena here directs the defendant to bring the material to the criminal clerk’s office of this court. It is not certain the Distirct Attorney will be given access to the evidence before trial. This problem does not appear to have been raised before; in the two oft-cited cases, Metzger v. Pearcy (393 F. 2d 202) and Tyrone, Inc. v. Wilkinson (410 F. 2d 639), the court allowed the prosecution to obtain copies of the *528 material for preparation and for nse on trial. In People v. P.A.J. Theater Corp. (66 Misc 2d 373, affd. 70 Misc 2d 790) the language is not clear as to what use would be made of the subpoenaed material. The subpoena duces tecum was served for use in the forthcoming trial; this does not seem to include the use for preparation for trial, but the court relies on Metzger and Tyrone and also cites Bethview (supra), which in broad language suggested the use of a subpoena duces tecum for prosecution purposes. Perhaps the subpoena’s effect should be limited here to use on trial unless the District Attorney can show need for it in preparing for trial.
Next it is claimed the subpoena is ‘ ‘ completely unauthorized by law, ” and that it violates defendant’s due process rights. No further explanation is made. Quite obviously the subpoena duces tecum is not “completely unauthorized by law” but is used generally as the vehicle for obtaining production of evidence not in control of the party seeking to use it, and is authorized for use in criminal matters by subdivision 3 of CPL 610.10. A number of cases dealing with precisely the problem here have discussed the possible use of the subpoena duces tecum as used here (Bethview Amusement, supra).
Finally the defendant argues that if the subpoena were complied with it would violate the Fifth Amendment right against self incrimination. Clearly this argument cannot be sustained. “ A corporation cannot claim the privilege against self-incrimination, and it is the settled rule that an officer of a corporation cannot refuse to produce corporate books on the ground that the disclosure might incriminate the corporation, or that the disclosure of the contents of the books might incriminate the officer himself. Wilson v. United States, 221 U. S. 361.” (Richardson, Evidence [9th ed.], p. 550.) That the material subpoenaed here is corporate property rather than corporate books is not significant, and the issue is the same.
It is clear that the District Attorney must have access to the allegedly obscene material in order to present his case. A number of cases decided by the Federal courts have suggested that, where massive seizures have been held to violate First Amendment rights and these wrongs have been rectified by the return of the .seized materials, the procedure for the government to follow to secure evidence for use on trials in the State courts would be either to issue a subpoena duces tecum or to secure a court order (Bethview Amusement Corp. v. Cohn, 416 F. 2d 410, supra; Tyrone, Inc. v. Wilkinson, 410 F. 2d 639, supra; Metzger v. Pearcy, 393 F. 2d 202, supra).
*529 The courts, in a number of these cases, distinguish between First and Fourth Amendment violations. Where Fourth Amendment rights are impinged the established “ cure ” is suppression of all evidence. However where the improper action affects First Amendment rights, the violation is corrected by return of the seized material (United States v. Cangiano, 464 F. 2d 320). In Cangiano a massive seizure of evidence was effected and after a suppression hearing it was determined that there was no Fourth Amendment violation. The Second Circuit affirmed the convictions. Among other points raised the defendants argue that the seizures were massive and in the absence of a prior adversary hearing constituted a violation of First Amendment rights requiring suppression of the evidence. The court makes a distinction between First and Fourth Amendment violations saying they do not always go hand in hand, and that the remedies for each are not the same (p. 328): “ Where seizure of allegedly obscene materials is not preceded by a procedure which affords a reasonable likelihood that non-obscene materials will reach the public, the proper remedy is the return of the allegedly obscene materials to those from whom they, were seized, not suppression of these items at a subsequent obscenity trial.”
The court cited Huffman v. United States (470 F. 2d 386), Bethview (supra), and Astro Cinema Corp. v. Mackell (422 F. 2d 293) as supporting its view that the exclusionary rule of the Fourth Amendment is inapplicable to seizures which violate First Amendment rights; that return of seized property is the proper action. That court, in Cangiano, also appears to accept the discussions in Bethview and Astro Cinema on the means available to the government to secure evidence for use in prosecution.
In Huffman (supra, p. 392) the court said: “We agree with the courts that have held the exclusionary rule inapplicable where, as here, the seizure is invalid because of the requirement of adversary hearing, since the primary right involved is the public’s First Amendment right of access rather than the defendant’s Fourth Amendment Immunity from unreasonable search and seizure. The courts have simply required the Government to return the publications to their owners * * * making copies of the publications available as evidence in future criminal prosecutions.”
This is the juncture we have arrived at in the present case. The violation caused by the massive seizure was one of the public’s First Amendment rights and not the defendant’s or *530 the corporation’s Fourth Amendment rights. That violation was cured by the return of the materials seized; a motion to suppress has been denied; and the People are now trying to obtain copies of the returned property for preparation and use on trial. Of the two alternatives suggested by the above-cited cases, the District Attorney has chosen to use the subpoena duces tecum. This method has been used previously and was upheld as valid (People v. P.A.J. Theater Corp., 66 Misc 2d 373, affd. 70 Misc 2d 790, supra).
In P.A.J., the facts are similar to those here. The District Attorney served a subpoena duces tecum on the defendant to obtain a copy of the film .seized but returned for use in preparing and trying the case. The defendant moved to .quash the subpoena. The court held there was no Fourth Amendment taint sufficient to justify suppressing the evidence. Further the court added (p. 377): “ Likewise if we assume that a First Amendment violation was involved the remedy is clearly not suppression— for the rationale of the prior adversary hearing requirement is not suppression, but exposure * * * The rationale underlying the return of the films * * * is to emphasize the public’s right to see * * * such films prior to á judicial examination of obscenity. It would be the epitome of logical inconsistency to maintain that the First Amendment protects the right of a person to show films and the right of the public to see films but prohibits that right to Judges and juries.”
Accordingly, defendant’s motion to quash should be and is denied.