THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellant, *v.* S & F CORPORATION *et al.*, Defendants-Appellees.

(Nos. 59086-7 cons.;

First District (4th Division)—November 27, 1974.

Bernard Carey, State's Attorney, of Chicago (Kenneth L. Gillis, Lee T. Hettinger, and Jerome Charles Randolph, Assistant State's Attorneys, of counsel), for the People.

Patrick A. Tuite, of Chicago, for appellees.

Mr. PRESIDING JUSTICE ADESKO delivered the opinion of the court:

This appeal arises from an order of the trial court granting a motion made by the defendants to suppress evidence. The subject matter of the motion was a movie entitled "The Director's Dilemma." The State brings this appeal pursuant to Illinois Supreme Court Rule 604(a)(1). Ill. Rev. Stat. 1971, ch. 110A, par. 604(a)(1).

Two complaints were sworn out against the defendants on August 25, 1972, charging them with the offense of obscenity. (Ill. Rev. Stat. 1971, ch. 38, par. 11—20(a)(3).) The charges of violating the Illinois obscenity statute stem from exhibition of the film "The Director's Dilemma" at the Rush Theatre, Chicago, Illinois. In addition to the complaints two subpoenas duces tecum were also issued on August 25, 1972. One was directed to the defendant S & F Corporation and the other to "Person in Charge, Rush Theatre." The subpoenas commanded an appearance and testimony in an adversary hearing before Judge Lionel J. Berc to determine whether the film is obscene. The subpoenas also directed that the film be produced without any deletions or additions being made. On August 29, 1972, the defendants made a motion to quash the subpoenas duces tecum but Judge Berc denied it. Defendant Finzelber, who is the president of the corporate defendant, refused to comply with the subpoena duces tecum and Judge Berc entered an order finding Finzelber to be in wilful and direct contempt of the court. The order directed that Finzelber be held in custody without bail until he complied with the subpoena duces tecum.

An emergency motion for bail was filed by defendant Finzelber with the Illinois Supreme Court on August 29, 1972. On the same day Mr. Justice Schaeffer denied the motion. Subsequently, defendant Finzelber complied with the subpoena duces tecum and was released from custody.

An adversary hearing was held on August 30, 1972, and Judge Berc found the film to be obscene and ordered it impounded and surrendered to the police for preservation as evidence. A criminal prosecution was commenced against the defendants and a motion to suppress the film was made. The motion to suppress was premised on the assertion that pro-

duction of the film violated · defendant Finzelber's fifth amendment rights. On February 28, 1973, the trial court, Judge Murphy presiding, sustained the motion to suppress and the State appeals.

The State maintains that neither the corporate defendant, S & F Corporation, nor the individual defendant, Sidney Finzelber, can validly claim the privilege against self-incrimination. In addition the State asserts that a subpoena duces tecum requiring the production of a motion picture does not violate Mr. Finzelber's fifth amendment rights against self-incrimination. We are of the opinion that the State's position as to the inability of the defendants' to invoke the fifth amendment privilege against self-incrimination is correct.

■■ It is well-settled that a corporation cannot assert the privilege against self-incrimination. (*Hale v. Henkel,* 201 U.S. 43, 50 L.Ed. 652, 26 S.Ct. 370 (1906); *Wilson v. United States,* 221 U.S. 361, 55 L.Ed. 771, 31 S.Ct. 538 (1911).) In addition it has been equally well-established that an officer of a corporation cannot refuse to produce corporate books and records on the ground that the disclosure might incriminate the corporation or the officer himself. As was stated in *Wilson, supra,* at pages 384 to 385:

> "If the corporation were guilty of misconduct, he [the corporate officer] could not withhold its books to save it; and if he were implicated in the violations of law, he could not withhold the books to protect himself from the effect of their disclosures. The reserved power to visitation would seriously be embarassed [sic] if not wholly defeated in its effective exercise, if guilty officers could refuse inspection of the records and papers of the corporation. No personal privilege to which they are entitled requires such a conclusion. It would not be a recognition, but an unjustifiable extension, of the personal rights they enjoy. They may decline to utter upon the witness stand a single self-criminating word. They may demand that any accusation against them individually be established without the aid of their oral testimony or the compulsory production by them of their private papers. But the visitorial power which exists with respect to the corporation of necessity reaches the corporate books, without regard to the conduct of the custodian."

The defendants in the case at bar, therefore, had no privilege against self-incrimination that could be legitimately asserted.

■■ Defendants, however, maintain that in this case the privilege against self-incrimination could be validly claimed by the corporation and the individual because a film is not a business record regularly kept in the course of business, nor is it a record required to be kept by law.

The defendants contend that *Hale v. Henkel, supra, Wilson v. United States, supra,* and all the Illinois cases dealing with a corporation's inability to invoke the privilege against self-incrimination have dealt with the books, records, and journals of the corporation and that it is only when disclosure of such materials is sought that the corporation and its officers are prevented from invoking the fifth amendment privilege. However, there is nothing in the cases to require such a narrow interpretation. There is no question that the film at issue in this case was corporate property. In the case of *People v. Brown,* 339 N.Y.S.2d 470, 72 Misc.2d 526 (1972), the prosecution in an obscenity case after having been ordered to return certain material which had been seized pursuant to a search warrant sought its production for use in trial by means of a subpoena duces tecum. The defendant moved to quash the subpoena on the ground *inter alia* that it constituted a violation of his fifth amendment rights. The court did not agree with the defendant and denied the motion. In regards to the defendant's fifth amendment claim, the court after stating that the privilege was not available to a corporation and that a corporate officer could not claim the privilege even though disclosure would incriminate himself, stated at page 473: "That the material subpoenaed here is corporate property rather than corporate books is not significant, and the issue is the same." We agree and the focal point of attention must be whether disclosure of the material sought, be it corporate books and records or other corporate property, would violate the protection afforded to the citizenry through the Fifth Amendment to the United States Constitution.

■■■ The parameters of the protection afforded by the fifth amendment were well-stated by the United States Supreme Court in *United States v. White,* 322 U.S. 694, 698, 88 L.Ed. 1542, 1546, 64 S.Ct. 1248, 1251 (1944).

> "The constitutional privilege against self-incrimination is essentially a personal one, applying only to natural individuals. It grows out of the high sentiment and regard of our jurisprudence for conducting criminal trials and investigatory proceedings upon a plane of dignity, humanity and impartiality. It is designed to prevent the use of legal process to force from the lips of the accused individual the evidence necessary to convict him or to force him to produce and authenticate any personal documents or effects that might incriminate him."

In addition, the Supreme Court in *White* after reiterating that the privilege against self-incrimination cannot be utilized by or on behalf of a corporation stated, "Moreover, the papers and effects which the privilege protects must be the private property of the person claiming the privi-

lege, or at least in his possession in a purely personal capacity. Boyd v. United States, 116 U.S. 616." (322 U.S. at 699, 88 L.Ed. at 1546, 64 S.Ct. at 1251; *accord, People v. Ryan,* 410 Ill. 486, 494, 103 N.E.2d 116, 120 to 121, (1951). The property which was the subject of the subpoenas duces tecum in the case at bar did not belong to a natural individual but was owned by the corporate defendant, S & F Corporation. The film was not the private property of the person claiming the privilege, defendant Finzelber, nor was it in his possession in a purely personal capacity. As was stated in *People v. Modern Amusement Co.,* 340 N.Y.S.2d 748, 752, 72 Misc.2d 950 (1973):

> "In addition, the defendants are met by still another insurmountable obstacle: motion picture film cannot be equated with or analogous to private papers or documents. They are indeed at opposite poles since the subpoenaed film was intended for and allegedly shown to theater-goers. By its nature the film is a *public* item not intended for the sole use of the defendants, as would be the case for private books or papers."

It is, therefore, apparent that the corporate and individual defendants in the case at bar had no privilege against self-incrimination that could be validly asserted and that production of the film in this case does not violate the protection afforded to the citizenry by the Fifth Amendment to the United States Constitution.

Since we are of the opinion that the fifth amendment could not be legitimately invoked by either of the defendants, we deem it unnecessary to discuss the State's alternative theory that production of the film does not violate the fifth amendment because it does not constitute testimonial or communicative evidence of the defendants. In addition the defendants' brief contains arguments relating to Judge Berc's finding defendant Finzelber in direct contempt of court, but no notice of appeal was filed within 30 days of that order. Therefore, this issue and the arguments pertaining thereto are not properly before this court. Ill. Rev. Stat. 1971, ch. 110A, par. 606(a) and par. 303(a).

We are of the opinion that the trial court erred in granting the defendants' motion to suppress evidence. Therefore, for the reasons herein stated, the order of the Circuit Court of Cook County is reversed.

Reversed.

BURMAN and DIERINGER, JJ., concur.