THE PEOPLE OF THE STATE OF İLLINOIS, Plaintiff-Appellee, *v.* RICHARD BROWN *et al.*, Defendants-Appellants.

(No. 73-108;

Second District—April 18, 1975.

Patrick A. Tuite, of Chicago, for appellant.

John H. Maville, State's Attorney, of Belvidere, and James W. Jerz and Martin Moltz, both of Illinois State's Attorneys Association, of Elgin, for the People.

Mr. PRESIDING JUSTICE THOMAS J. MORAN delivered the opinion of the court:

On December 27, 1972, the State's attorney filed a petition for adversary hearing against defendants; alleging that two films were being exhibited at the Cinematix 770 Theatre, managed by Richard Brown, and that such films violated section 11—20(a) of the Criminal Code. (Ill. Rev. Stat. 1971, ch. 38, par. 11—20(a)(1).) The petition requested that the court set a date to view the films to determine whether their exhibition constituted probable cause for the offense of obscenity, enjoin the defendants from removing the films from the jurisdiction, and order the defendants to produce the unedited, uncut films at 2 P.M. on December 29, 1972. More explicit information as to the alleged obscene nature of the films was provided in an affidavit filed with the petition by the police officer who had seen the films. On the same day, the court granted the prayer of the petition, ordered defendants to appear on December 29, 1972, for a prior adversary hearing, and ordered that they produce the unedited films. Also, on the same day, there issued a subpoena duces tecum requiring that the two allegedly obscene films be produced at the hearing; there additionally issued a search warrant ordering the two films to be "found" rather than seized.

. On December 27, pursuant to the search warrant, Robert Bales of the Illinois State Police returned to the theater and marked certain portions of a film with the date and his initials; he did not seize the films.

On December 29, after a hearing, the court denied respondents' motion to suppress the search warrant, reserved judgment on the motion to suppress the subpoena duces tecum, and set an adversary hearing for January 9, 1973. On the latter date, the court quashed the subpoena duces tecum and, upon defendants' refusal to produce the films for the adversary hearing, they were found in contempt of court. The individual defendant (Brown) was ordered to jail for 60-days or until such time as he complied with the court order; the corporate defendant was fined $2500. Brown was released on bail pending appeal.

Defendants' first issue is based upon the premise that the only permissible procedure for determining obscenity is that contained in section 108—12 of the Code of Criminal Procedure (Ill. Rev. Stat. 1971, ch. 38, par. 108—12) which provides for a pretrial hearing within 10-days *after* seizure to determine the obscene nature of material seized. Since the legislature has not expressly authorized a preseizure hearing, as conducted in the instant case, it is contended that any orders entered would be void for lack of jurisdiction of the court. It is the State's position that the court does have jurisdiction to conduct prior adversary

hearings because such hearings are constitutionally required prior to seizure in the absence of exigent circumstances or search warrant.

■■ While obscenity is not protected by the first amendment (*Roth v. United States*, 354 U.S. 476, 1 L.Ed.2d 1498, 1506-07, 77 S.Ct. 1304, 1309 (1957)), seizure of allegedly obscene material can, in certain instances, result in a prior restraint on first amendment rights. Therefore, to allow effective enforcement of obscenity statutes while simultaneously protecting the public's access to ideas via the various media, the courts have adopted more stringent procedural rules where seizures of allegedly obscene materials are involved. In *Roaden v. Kentucky*, 413 U.S. 496, 37 L.Ed.2d 757, 763-65, 93 S.Ct. 2796 (1973), it was held that under the fourth amendment, a higher standard of "reasonableness" is required for seizure of material arguably protected by the first amendment than is required for objects not afforded this protection. At page 763, the Court recognized that "[a] seizure reasonable as to one type of material in one setting may be unreasonable in a different setting or with respect to another kind of material." A distinction exists, on the one hand, between guns, contraband, or stolen goods and, on the other hand, quantities of books, movies and items arguably falling within first amendment protection. Absent exigent circumstances, a seizure of the latter requires a search warrant meeting a high standard of probable cause or an adversary hearing prior to seizure in order to determine probable cause. Without these safeguards, a seizure can be unreasonable as a form of prior restraint on the right of expression.

■■ A prior adversary hearing on the issue of probable obscenity is not constitutionally required before a film can be seized when a neutral magistrate issues a warrant based upon a determination of probable cause and a prompt determination of obscenity is available following the seizure. (*Heller v. New York*, 413 U.S. 483, 37 L.Ed.2d 745, 754, 93 S.Ct. 2789 (1973).) Clearly, the procedure of section 108—12 is a constitutionally adequate method for determining the question of obscenity, but we do not find that it is the *only* means available in Illinois.

■■ Proceedings under section 11—20 of the Criminal Code (Ill. Rev. Stat. 1971, ch. 38, par. 11—20), initiated by criminal complaint, are not civil in nature. (*People v. Movies, Inc.*, 49 Ill.2d 85, 87 (1971).) We deem that, here, the "petition for adversary hearing", filed and designated with a criminal file number, was in essence a criminal complaint. The petition meets the standards required of such complaint, *i.e.*, it sets forth the nature of the charge in order that defendants may prepare their defense and use any judgment as a bar to further prosecution for the same offense. (*People v. Sirinsky*, 47 Ill.2d 183, 186 (1970).) The

prior adversary hearing is a preliminary hearing. Its purpose is to determine whether there exists probable cause that the crime charged had been committed and, if so, whether it was committed by the accused. (I.L.P. *Criminal Law* § 174; *People v. Bonner*, 37 Ill.2d 553 (1967), *cert. denied*, 392 U.S. 910 (1968).) Upon the filing of the petition, the court thus had authority to issue an arrest warrant and to order the films seized pending hearing within 10 days as prescribed by section 108—12.

■■ The procedure here differs from that provided in section 108—12 in that the films were not physically seized and held in custody pending hearing. Rather, they were marked for identification pursuant to a lawful search warrant and the individual defendant was ordered to bring them to the hearing. The difference did not alter the court's authority to conduct the hearing as an ordinary criminal proceeding.

■■ Further, courts have authority to develop procedures in the absence of statutory authority. (See *People v. Warr*, 54 Ill.2d 487 (1973) wherein the court adopted a procedure in the nature of a post-conviction hearing for persons convicted of a misdemeanor. See also *Houston v. Manerbino*, 521 P.2d 166 (Colo. 1974).)

■■ The purpose of section 108—12 is to assure a prompt preliminary determination of obscenity so that materials seized (not in violation of section 11—20) are quickly returned to their owner. (See Ill. Ann. Stat. ch. 38, § 108—12 (Smith-Hurd 1963).) Had the court followed the procedure under section 108—12, the defendants could have been lawfully deprived of the use of the films for a maximum of 10 days if they chose not to incur the expense of having copies of the films made. By merely marking the films and ordering them produced for hearing, the court's action innured to the benefit of defendants who were thereby permitted to continue exhibiting the films. Thus, the procedure afforded defendants more protection than section 108—12, extended constitutional guarantees to defendants and the public, and avoided the potential danger of prior restraint. We conclude that the procedure adopted herein was within the court's jurisdiction and that the orders entered thereunder are not void.

The individual defendant maintains that he cannot be compelled to honor the subpoena ordering him to produce the films for the adversary hearing, claiming his fifth-amendment privilege against self-incrimination. He objects specifically to the subpoena, which was quashed. We will consider, therefore, that his fifth-amendment claim relates to the order requiring him to produce the film.

■■ The boundaries of protection afforded by the fifth amendment have been clearly delineated. The privilege against self-incrimination

"* * * is essentially a personal one, applying only to natural individuals. * * * It is designed to prevent the use of legal process to force from the lips of the accused individual the evidence necessary to convict him or to force him to produce and authenticate any personal documents or effects that might incriminate him." (*United States v. White*, 322 U.S. 694, 698, 88 L.Ed. 1542, 1546, 64 S.Ct. 1248, 1251 (1944).)

As a result, an officer or agent of a corporation, ordered to produce corporate books and records in his custody, cannot assert the privilege against self-incrimination on the grounds that the disclosure might incriminate him personally. (*Wilson v. United States*, 221 U.S. 361, 55 L.Ed. 771, 779-81 (1911); *People v. Ryan*, 410 Ill. 486, 494-95 (1951); *People ex rel. Scott v. Pintozzi*, 50 Ill.2d 115, 125 (1971).) This rule applies to corporate property and is not limited specifically to corporate books and records. *People v. Brown*, 72 misc. 2d 526, 339 N.Y.S. 2d 470, 473 (1972).

■■ In the instant case, there is no claim that the films ordered produced were the private property of the individual defendant. Indeed, "By [their] nature the film[s are] * * * *public* item[s] not intended for the sole use of defendants, as would be the case for private books or papers." (*People v. Modern Amusement Co.*, 72 misc. 2d 950, 340 N.Y.S. 2d 748, 752 (1973).) Because the films are corporate property and do not fall within the protection afforded an individual by the fifth amendment, we hold that the individual defendant cannot assert his fifth-amendment privilege against self-incrimination as a bar to producing the films ordered by the court. *People v. S & F Corp.*, 24 Ill.App.3d 478 (1974).

■■ Due to our findings, it is unnecessary that we answer the corporate defendant's assertion that the evidence does not sustain the judgment of contempt against it. A review of the record makes clear that the refusal of defendants to produce the films was based upon good faith assertions of legal defenses. There was no instance of contumacious conduct or behavior intended to disrupt the normal proceedings of the court. (See *People v. Manley*, 19 Ill.App.3d 365, 372 (1974).) While a party generally risks contempt for disobeying a court order even though such disobedience is based upon a good faith private determination of the law, we are faced here with disobedience based upon a fifth-amendment claim against self-incrimination. In *Maness v. Meyers*, —— U.S. ——, 42 L.Ed.2d 574, 584, 95 S.Ct. 584 (1975), the Supreme Court reversed the judgment of contempt against a private attorney who in good faith counseled his client to refuse to comply with a subpoena duces tecum on fifth amendment grounds. The Court reasoned that the

ordinary remedy of suppressing material after it was produced was insufficient to protect the privilege which the amendment was intended to protect. "Compliance could cause irreparable injury because * * * courts cannot always 'unring the bell' once the information has been released."

For the reasons stated, we reverse the judgments of contempt against the individual and the corporate defendant but affirm the judgment in all other respects and remand the cause for further proceedings.

Judgments reversed in part, affirmed in part, and cause remanded for further proceedings.

RECHENMACHER and GUILD, JJ., concur.