No. 2--02--0075

______________________________________________________________________________

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT

______________________________________________________________________________

THE PEOPLE OF THE STATE ) Appeal from the Circuit Court

OF ILLINOIS, ) of Jo Daviess County.

)

Plaintiff-Appellee, )

) Nos. 01--CF--45

v. )      01--DT--32

)

WILLIAM T. LIBBERTON, ) Honorable

) William A. Kelly,

Defendant-Appellant. ) Judge, Presiding.

______________________________________________________________________________

JUSTICE KAPALA delivered the opinion of the court:

Defendant, William T. Libberton, appeals from his convictions of driving under the influence of alcohol (DUI) (625 ILCS 5/11--501(a)(1), (a)(2) (West 2000)) (two counts, one of which was merged into the other) and false report of a vehicle theft (625 ILCS 5/4--103(a)(6) (West 2000)).  We now affirm.

I. BACKGROUND

Defendant was charged by indictment with one count of false report of a vehicle theft and two counts of DUI.  His case was tried to a jury.  The arresting officer, Steven Jahncke of the Warren police, testified that on March 3, 2001, shortly after 2 a.m., he was on routine patrol in his squad car.  The night was very cold and the ground was snow-covered.  As he was driving, he encountered defendant, who was emerging from a roadside ditch.   He stopped his vehicle, approached defendant, and asked him what he was doing.  Defendant stated that he was going to a friend's house.  When Jahncke asked him why, he said that he needed to use a phone to call the police because his car had been stolen.  Jahncke asked defendant for identification and then used the car radio to report a stolen car to the sheriff‛s department.  Right after Jahncke made the report, but during continued radio communication, defendant told Jahncke that he had found his car and that it was stuck in a snowbank by some grain bins.  

Jahncke requested that defendant ride with him to the car.  On the way, Jahncke asked defendant if there was anyone with him, and defendant said that he was with his girlfriend, who was in the car sleeping.  Jahncke noticed that defendant smelled of alcohol.  They arrived at the car, which was well back from the street and behind some buildings.  Jahncke asked defendant how he found his vehicle, and defendant said that he was walking to his home in another town when he found it.  

Jahncke approached the vehicle and saw a woman in the passenger seat slumped over with her head between her legs.  (The woman was later identified as Kimberlee Quire (Quire), who, by the time of trial, had married defendant and changed her name to Kimberlee Libberton.)  Jahncke attempted to wake her to have her open the locked door, but it took her some time to wake up and, when she did wake, she had difficulty opening the door.  After Quire answered several questions posed by Jahncke,  Jahncke requested that a wrecker be dispatched.  Under cross-examination, he explained that, because defendant was claiming that the car had been stolen, the towing company would store the vehicle indoors so that it was protected from tampering and the State Police crime scene investigators would be brought in to process the vehicle.  Jahncke identified a number of the photographs of the interior of the car as having been taken by the State Police.  

Deputy Casey Folkes of the Jo Daviess County sheriff's department arrived to assist Jahncke, and both defendant and Quire were questioned further.  Defendant told Jahncke that the car had been stolen from the lot at Wally's, a bar and that he had found it because, when he walked past the complex with the grain bins, it had occurred to him that it was a good place to hide a stolen car, and so he had gone to look.  Jahncke asked him if he had been driving, and defendant initially denied that he had, but later stated that he had tried to move the car in an attempt to get it unstuck.  Jahncke then asked defendant to undergo field sobriety tests.  Two of the three tests indicated probable intoxication.  Jahncke and Folkes then transported defendant and Quire to the Stockton police department, where defendant was subjected to a Breathalyzer test.  By the testimony of the Breathalyzer operator, defendant's breath-alcohol concentration was 0.165.  Jahncke also asked Quire to give a statement, which he wrote out and she signed.  He admitted that he had done the writing because Quire said that she was too drunk to write.

The State introduced a number of photographs of the area in which the car had been left.  The officers called by the State used these to indicate that it would have been difficult to see the car from the road.

Quire, called by the State, testified that she had gone with defendant to at least two bars, and that she and defendant had consumed alcohol at each, but that her memory of that night was poor, and she had no sense of time for that period.  She stated that she had no recollection of defendant driving the car from the last bar they had visited, Wally's, to behind the grain bins, but that she remembered being taken to the police station and answering the questions from which the statement was prepared.  She said that the statement could not accurately reflect her words because it included the time she left Wally's and the name of the business that had the grain bins, both of which were details that she did not know.  Her statement was read into the record.  It states:

"Bill [defendant] and I were at Wally's until approximately 12:45-1:00 A.M.  Bill and I had both been drinking.  Bill and I left Wally's, got into his car and drove up to Custom Grain [the location of the grain bins].  I had no idea where I was.  After he got the car stuck I fell asleep and the next thing I remember was someone knocking on the window asking me for my license."

Defendant was the sole defense witness.  He testified that he had parked his car near Wally's, leaving the keys in the ignition, but that when he came out after drinking for a while, the car was not where he had left it.  Defendant said that he thought that his friends were playing a joke so he began to search for his car.  After searching unsuccessfully, defendant and Quire set out walking toward a friend's house in another town.  Quire was barely able to walk.  As defendant passed the grain bins, he noticed his car behind them.  He left Quire with the car and, after remembering that he had a friend in the same town, started walking toward that friend's house.  He denied trying to drive the vehicle at any time after leaving Wally's, but admitted that he had been intoxicated.  He stated that he had gone back to the police the Monday after he was arrested to give them a list of items that he thought were missing from the vehicle.

The State, in closing argument, asserted that many aspects of defendant's testimony were illogical and commented that it was terrible that defendant persisted in claiming that his car had been stolen in order to escape responsibility for his drunk driving.  

Defendant's counsel emphasized defendant's right make the State prove its case: 

"It's not a crime, Ladies and Gentlemen, to profess your innocence.  It's your constitutional right to have a trial; we all possess that and that's all my client's done.  He said 'I'm not guilty of this' and his only choice when that decision is made is to come here and have a trial by 12 of his peers.

Now he does have an option, he could waive jury trial and try for [
sic
] the Court which is called a bench trial, but that's his decision alone and he made that decision to have the jury trial; and that's why we're here today because he professes his innocence on this." 

He then argued that defendant's version of events should be taken to be the truth because, as a lie to avoid trouble, it was much less sensible than other lies defendant could have told.  He argued that Quire's statement was discredited by her intoxication.  He suggested that the State's photographic exhibits had been deliberately chosen to overstate the difficulty defendant would have had in locating his car from the road.  Further, he argued that minor variations in the calibration of the Breathalyzer made the Breathalyzer data unreliable.  He stated that there were too many holes in the police evidence for the State to have met its burden of proof.

The State's Attorney, in rebuttal, stated that the case was a very important one to the people of the State of Illinois.  He argued that the pictures were accurate and representative, and then asserted that he "[did not] deal in any kinds of attempts to deceive."  He then stated: 

"[Defendant's counsel] begins his argument by asking you; there's no other choice for this Defendant, right?  No other choice.  He's got to take this case to trial and profess his innocence.  Well, not quite.  Okay?  There is something that about 80 to 90 percent of Defendants do in this country and that is they be [
sic
] honest, forthright.  They go into the courtroom and plead guilty.

MR. NACK [Defense counsel]: Objection, that's grounds for mistrial, Judge.

THE COURT: Overruled. Go ahead.

MR. WEBER [State's Attorney]: It happens every day.  You hear about it all the time.  Right?

'You know what?  That story I gave was pretty stupid and I think it's time for me to accept responsibility for my stupidity in driving drunk and filing a false police report and I'll plead guilty.' "

He then argued that it is perfectly natural for someone to get tangled in his own lies, stated that defendant's intoxication was not even at issue because defendant had admitted it, reemphasized the physical implausibility of defendant's story, and suggested that Quire's renunciation of her statement could be the result of her bias in favor of her husband.  

He suggested that defense counsel was attempting to sow confusion:

"[T]hat's the defense; that's the tactic, right.  Well, Officer Craft did this and the machine did that and blah-blah, blah-blah, blah.  Folks, that is not even an issue in this case.  I asked him flat out, 'Were you over the legal limit?'  'Yeah, oh yeah.'  'Beyond .08?'  'Yeah.'  What do we need a machine for?  But see, that's the way.  That's the tactic, of course, you know let's get back in the jury room and let's, convince [
sic
] about the machine and let's convince [
sic
] about this and dah-dah-dah-dah-dah, and pretty soon there's 12 of you and there's reasonable doubt all over the place because you're thinking about all sorts of things that have nothing to do with the facts and circumstance and hard evidence in this case." 

In arguing against defense counsel's claim that defendant's story was unlikely to be a lie because it was not in his self-interest, he said:

"I'll tell you why he would [persist in his story], okay?  I will answer that question for you.  Because he wants to escape responsibility for his crime; because he wants to escape because he wants to walk; because he wants to get back out on the street, back out after the verdict and yuck it up with the officers, 'Hey-hey, you know, hey look at what I did and got away with it.' "

The jury found defendant guilty on all counts, and defendant moved to arrest judgment, for a new trial, and for a judgment not withstanding the verdict.  Issues raised included claims that the indictment for false report of a vehicle theft was inadequate in that it failed to allege that a third party had been harmed by the report, that such an allegation was a necessary element of the offense, and that the State's proof was inadequate because it failed to make any showing of this same purported element.  Defendant did not raise any issue relating to the State's closing argument.  The motions did allege that the State committed a discovery violation by failing to provide information about certain physical evidence to defendant until just before the trial.  During oral argument on the discovery issue, the State's Attorney indicated that the car had been dusted for fingerprints, although none were found that could be used for identification.  Defendant's motions were denied and defendant was sentenced to 180 days' periodic imprisonment and 2 years' probation.

II. ANALYSIS

On appeal defendant contends that (1) his conviction of the false report of a vehicle theft violated his substantive due process rights under the United States and Illinois Constitutions; and (2) the State's closing arguments were improper and violated his right to a fair trial.  We address each contention.

A.  Substantive Due Process

We begin by noting that defendant has cited provisions of both the Illinois Constitution (Ill. Const. 1970, art. I, § 2) and the United States Constitution (U.S. Const., amends. V, XIV) in support of his first contention; however, his arguments relate only to the Illinois constitutional provision.  Consequently, defendant has waived any argument under the federal constitution (188 Ill. 2d R. 341 (e)(7)) and our analysis will be so confined.  Defendant argues that because he "told the officer of the theft of his own car in response to questions by the officer, immediately informed the officer that he had located his car, did not accuse another citizen of the purported theft, and did not seek to profit from the conveyance of the false information, the prosecution of [defendant] as a Class-2 felon violated his right to substantive due process."  Defendant contends that his "report" is not the type of report envisioned by the legislature to be within the scope of the offense of falsely reporting a vehicle theft.  We disagree. 

Defendant directs us to 
People v. Morris
, 136 Ill. 2d 157 (1990).  In 
Morris
, the defendant had altered a temporary vehicle registration permit displayed on a vehicle he owned to show a later expiration date.  He was convicted of violating section 4--104(a)(3) of the Illinois Vehicle Code (Ill. Rev. Stat. 1987, ch. 95½, par. 4--104(a)(3)), which makes it a Class 2 felony to possess "any *** temporary registration permit *** knowing it to have been stolen, converted, altered, forged or counterfeited."  The issue in 
Morris
, pertinent to this appeal, was whether the penalty for possession of an altered temporary registration permit applied in that case violated the defendant‛s right to substantive due process under the Illinois Constitution (Ill. Const. 1970, art. I, §2).  
Morris
, 136 Ill. 2d at 161-62.  The court explained that in order " '[t]o be a valid exercise of police power, the legislation must bear a reasonable relationship to [the interest] which is sought to be protected, and the means adopted must constitute a reasonable method to accomplish such objective.' " 
Morris
, 136 Ill. 2d at 161, quoting 
City of Carbondale v. Brewster
, 78 Ill. 2d 111, 115 (1979).  The court then declared that "[t]he purpose of the anti-theft laws 'is to protect automobile owners against theft and to protect the general public against the commission of crimes involving stolen automobiles.' "  
Morris
, 136 Ill. 2d at 162, quoting 
People v. One 1979 Pontiac Grand Prix Automobile
, 89 Ill. 2d 506, 510 (1982).  The court then found that the defendant altered the temporary registration of his own vehicle and that there was no evidence that the alteration contributed in any way to any vehicle theft-related crime.  
Morris
, 136 Ill. 2d at 162.  Our supreme court concluded:

"A Class 2 penalty for a person who alters a temporary registration permit for a vehicle which he or she owns or to which he or she is legally entitled is not reasonably designed to protect automobile owners against theft, nor is it reasonably designed to protect the general public against the commission of crimes involving stolen motor vehicles.  Such a penalty is violative of the due process clause of our constitution, and may not stand." 
Morris
, 136 Ill. 2d at 162.

Applying the analysis from 
Morris
 to this case, we must determine whether a Class 2 penalty for a person who falsely reports a theft of his own motor vehicle is reasonably designed to protect automobile owners against theft, or reasonably designed to protect the general public against the commission of crimes involving stolen motor vehicles.  We conclude that, under the facts of this case, an application of a Class 2 penalty to defendant is reasonably designed to meet those legitimate state interests.

In this case, defendant's actions did have harmful consequences, the prohibition of which protects automobile owners against theft and protects the general public from the commission of crimes involving stolen motor vehicles.  Contrary to defendant‛s contention, his actions caused a misdirection of police resources.  It is important to note that although defendant quickly advised Officer Jahncke that the "stolen" vehicle had been recovered, he never retreated from his claim that a theft had occurred. The arresting officer's testimony makes it clear that defendant's car was inventoried and processed as a stolen vehicle.  It was held indoors so that it could be protected from tampering, and an Illinois State Police crime scene investigator photographed the vehicle.  The prosecutor‛s comments to the court related that it was also dusted for fingerprints.  Defendant's actions also kept the Warren police involved in the investigation of the possible theft:  according to defendant's testimony, he came to the police station the Monday following his arrest to provide the police with a list of items he thought were missing from his vehicle.  Deterring misdirection of police resources advances anti-theft interests; for example, it improves the protection of automobile owners against vehicle theft by increasing the resources that can be expended on solving or preventing actual automobile thefts.  Further, the deterrence of such misdirection makes police resources available to investigate, detect, and prevent all crimes that negatively affect the public in general, including crimes involving stolen motor vehicles.  Accordingly, the application to defendant of the Class 2 penalty provided for by section 4--103(b) for a violation of section 4--103(a)(6) did reasonably relate to legitimate state interests and, therefore, did not violate his due process rights.

Defendant points to the State‛s closing argument in which the prosecutor referred to defendant‛s story as "laughable" and "ridiculous."  Defendant suggests that this characterization is an acknowledgment by the State that defendant‛s report was so inane that there was no reason to expend police resources to investigate the theft.  We realize that it is possible that a report of a stolen motor vehicle could be so outlandish (
e.g
., Martians stole my car!) that charging a person with the false report of a stolen vehicle would violate that person‛s right to substantive due process guaranteed by the Illinois Constitution.  However, this is not such a case.  The record indicates that the report was at least plausible and that the police took it seriously enough to impound defendant‛s car for investigation and to apply valuable resources to the case, including the time of an Illinois State Police crime scene investigator.  Moreover, defendant did nothing after the initial report to dissuade the police from believing the veracity of his claim, even to the point of bringing them a list of items he claimed were stolen from his car.  Defendant never did retract the report and stuck to his story at trial.

Defendant also argues that 
People v. Fuller
, 187 Ill. 2d 1 (1999), holds that the false report provision, read in the light of 
Morris
, requires that the false report have some victim in order for it to be punishable.  Defendant contends that his crime was victimless.

The defendant in 
Fuller
, after allowing her former husband to borrow her car, called the police and reported it stolen.  The former husband was stopped by police, arrested, and ultimately charged with the theft.  
Fuller
, 187 Ill. 2d at 4.  After the defendant admitted that she had lied about the theft, she was charged with
 false report of a vehicle theft.  
Fuller
, 187 Ill. 2d at 5.  She moved to dismiss the charge on the grounds that, under the rationale of 
Morris
, application of the false report provision in her case would violate her due process rights.  
Fuller
, 187 Ill. 2d at 5-6.  Our supreme court rejected the defendant‛s argument that punishing her particular actions did nothing to advance anti-theft interests and that, thus, to apply the false report provision to her actions would violate her due process rights.  
Fuller
, 187 Ill. 2d at 5-6.  

As to defendant‛s contention that 
Fuller
 requires that the defendant's conduct have a victim, we disagree.  We believe that our supreme court simply distinguished 
Morris
 and 
People v. Hamm
, 149 Ill. 2d 201 (1992), on this basis, but did not require a specific victim in order to conclude that a given penalty is reasonably related to the legislative purpose of the statute in question.  See 
Fuller
, 187 Ill. 2d at 16.  The court found it 
sufficient
 that there was harm to a specific victim, 
i.e.
, the defendant‛s former husband, in deciding if the Class 2 penalty was reasonably related to the legislative purpose, but nothing the court said indicates that this is 
necessary
.

Even if 
Fuller
 could be read to include a victim factor in the due process equation, we believe that it was met in this case.  In his trial testimony, defendant related that when he emerged from Wally's bar and discovered his vehicle was missing, he thought that his friends were playing a joke on him, so he began to search for his car.  We would certainly expect that Officer Jahncke of the Warren police department, as well as other law enforcement officers working in the vicinity, could easily ascertain who these "friends" of defendant were and subject them to an investigation regarding this incident.  Moreover, defendant potentially exposed persons who had innocently touched his vehicle in the past to a stolen-motor-vehicle investigation.  Although no fingerprints suitable for comparison were located on defendant‛s vehicle, at the time defendant made the report he did not know that the innocent people who had touched his vehicle in the past would be so fortunate.  As the supreme court in 
Fuller
 observed, "the defendant‛s actions 
exposed
 [innocent people] to the uncertainty and expense that will result from being falsely accused of a crime." (Emphasis added.) 
Fuller
, 187 Ill. 2d at 19.

For the foregoing reasons, we reject defendant‛s contention that the Class 2 felony penalty that was applied to him in this case was a violation of his right to substantive due process of law under the Illinois Constitution.

B. The Prosecutor‛s Closing Argument

Defendant‛s second contention on appeal is that the  prosecutor's closing arguments denied him a fair trial.  Defendant notes that this claim was not raised in his posttrial motions, but he claims that the improprieties were serious enough to rise to the level of plain error.  Because the standard for reversal of a conviction on appeal due to improper closing argument by the State is much the same as the plain-error standard, the failure to raise this issue before the trial court has little effect.  "The standard of review applied to arguments by counsel is similar to the standard used in deciding whether a plain error was made:  comments constitute reversible error only when they engender substantial prejudice against a defendant such that it is impossible to say whether or not a verdict of guilt resulted from those comments."  
People v. Nieves
, 193 Ill. 2d 513, 533 (2000).  

We agree with defendant that certain parts of the rebuttal argument were improper.  However, we do not agree that every portion of the rebuttal singled out by defendant is improper, and, more critically, we do not agree that the improper remarks rise to the level of reversible error.  

Defendant argues that it was improper for the State to suggest that defense counsel was attempting to confuse the jury.  These comments by the State were proper in light of defendant's remarks which attempted to make much of a minor discrepancy in the calibration of the Breathalyzer used to test him.  Comments on the defense's attempt to use minor discrepancies to discredit the State's evidence are proper rebuttal.  
People v. Hudson
, 102 Ill. App. 3d 346, 349 (1981).  We read the State's comments not as an attempt to accuse defendant's counsel of dishonesty but, rather, to draw attention to his trial tactic.

Defendant further argues that it was improper for the State to suggest that defendant and counsel had encouraged his wife to lie on his behalf.  It is not clear that the State made such a claim, and if it did, it immediately retracted it.  The interchange, discussing the use of Quire's written police statement, was as follows:

"MR. WEBER [State's Attorney]: And because Defendants attempt to get around [statements made to police] by later bringing in [the persons who made the statements] and having them say 'I don't remember.  I don't remember', okay, that does not--

MR. NACK [Defense Counsel]: I'll object to that.  There's no indication that we had anything to do with that.  The implication is we told her to come in here and lie.

THE COURT: Overruled. Go ahead.

MR. WEBER; Well, I certainly don't want to leave that impression whatsoever if that's the impression I gave, I would certainly withdraw it and strike it and I don't think I was saying that but if I did, I apologize.  What I mean is, he's married to her, okay, and now she comes in here and says I don't remember."

Generally, a trial court can correct any error by sustaining an objection and instructing the jury to disregard the remark.  
People v. Cisewski
, 118 Ill 2d. 163, 178 (1987).  Here, although the court overruled the objection, the State itself was at pains to correct the impression.  With any implication that defendant or his counsel was suborning perjury definitively retracted, all that remained of the statement was a comment about the likelihood of the witness's bias, which was proper.

The State made comments which suggest, essentially, that a decent person in defendant's position would have pleaded guilty.  Negative comments about a defendant's exercise of his or her constitutional rights are improper because they penalize the defendant for the exercise of those rights.  
People v. Mulero
, 176 Ill. 2d 444, 462 (1997).  This argument by the State is nothing if not an attempt to anger the jury at defendant for his choice to have a trial.  The State argues that this line of argument was invited, but this was not the case.  In closing, defendant's counsel argued that, 
once
 
defendant
 
chose
 
to
 
assert
 
his
 
right
 
to
 
plead
 
his
 
innocence
, he had no choice but to go to trial.  He further stated that defendant had the choice between a bench trial and a jury trial, and that defendant had chosen to have a jury trial.  Nothing in these remarks could be understood to state that defendant was forced to go to trial.  If anything, the remarks appear to have been intended to remind the members of the jury that they were assisting in upholding defendant's right to a trial by jury.  

The State also commented that defendant's purpose in lying was to be able to laugh at the police when he was back on the street.  It is error for the trial court to permit comments that serve only to arouse the passions of the jury, and particularly comments that attempt to turn the jury's verdict into a test of its support for law enforcement.  
People v. Slabaugh
, 323 Ill. App. 3d 723, 731 (2001).  The State could point out that defendant was motivated to lie, but the comment about him laughing at police went well beyond this.  The comment had no basis in the evidence and seems to have been designed to be purely inflammatory. 

Generally, improper closing arguments by the State will constitute reversible error only if there is doubt as to whether the jury would have rendered a guilty verdict in the absence of the comments.  
Nieves
, 193 Ill. 2d at 533.   Nothing in the case suggests that the closing argument had such an effect on the outcome of the trial.  With regard to the false-reporting charge, the only dispute was the legal one of whether the provision under which he was charged applied to defendant's admitted conduct.  With regard to the DUI charge, the only real dispute was whether defendant had driven his car after he became intoxicated.  On this point, the jury heard testimony of defendant's own admission that he had driven the car (by trying to get it unstuck) after he left the last bar.  This, coupled with the implausibility of defendant's explanation as to how the car got to the place it was found, made a sufficiently strong case for defendant's guilt that we can presume that the State's closing argument did not affect the verdict, and under the general standard there is no reversible error.

Defendant also argues that under 
People v. Blue
, 189 Ill. 2d 99, 139 (2000), and 
People v. Ray
, 126 Ill. App. 3d 656, 663 (1984), closing argument that exceeds all bounds of propriety can constitute reversible error, even when the evidence against the defendant is overwhelming.  Both cases stand for the proposition that the cumulative effect of errors during the course of a trial can so taint the proceedings as to deprive the defendant of a fair and impartial trial and thus require reversal even in the face of evidence that strongly establishes the defendant's guilt.  
Ray
 holds that such taint can be caused by improper closing argument alone.   However, the errors in 
Ray
 were much more pervasive than those in this case.  In 
Ray
, the court noted that it was examining only the most egregious of the prosecutor's closing comments, and yet it listed 16 instances of claiming that defense counsel was lying, a single instance of suggesting that the defendant no longer enjoyed the presumption of innocence, a single instance of drawing attention to the fact that the defendant had not testified, several instances of suggesting that excluded evidence would have favored the State, several suggestions that the defendant had intimidated witnesses, and several insinuations that the defendant had a long criminal history.  
Ray
, 126 Ill. App. 3d at 660-63.  

Without diminishing the failings of the State in this matter, we recognize that improper comments in this case were neither as pervasive nor as potentially damaging as those in 
Ray
.  The quantity of improper comments in this case does not match the sheer quantity of the inflammatory remarks in 
Ray
.  Furthermore, the improper comments in this case lacked the potential of those in 
Ray
 to confuse the jury.  There, the comments brought to the jury's attention the existence of excluded evidence and otherwise attempted to mislead the jury as to the evidence that it should have considered, whereas here the improper remarks were simply inappropriate appeals to emotion
.

III.  CONCLUSION

For the reasons stated, the judgment of the circuit court of Jo Daviess County is affirmed.

Affirmed.  

      BYRNE, J., concurs.

           PRESIDING JUSTICE HUTCHINSON, dissenting:

I respectfully dissent.  I believe that State's Attorney Glen Weber's rebuttal argument was so fraught with improper comments that it not only rose to the level of reversible error, it shattered the ceiling of courtroom decorum and professional conduct.  I recognize the general principle of affording prosecutors wide latitude in closing argument.  See 
People v. Blue
, 189 Ill. 2d 99, 127 (2000).  However, this wide latitude is not without limits.  See 
People v. Slabaugh
, 323 Ill. App. 3d 723, 727-32 (2001).  A fundamental tenet of our criminal justice system is that prosecutors owe defendants a duty of fairness.  
People v. Amaya
, 255 Ill. App. 3d 967, 973 (1994).  This duty extends throughout the trial and includes closing arguments.  
Amaya
, 255 Ill. App. 3d at 973.  What this means is that State's Attorney Weber has an ethical obligation to refrain from presenting improper and prejudicial argument.  See 
People v. Hudson
, 157 Ill. 2d 401, 441 (1993).  We expect our state's prosecutors to prosecute with earnestness and vigor.  But as the United States Supreme Court has recognized, "[W]hile [the prosecutor] may strike hard blows, he [or she] is not at liberty to strike foul ones."  
Berger v. United States
, 295 U.S. 78, 88, 79 L. Ed. 1314, 1321, 55 S. Ct. 629, 633 (1935).

In the present case, the first foul blow emanating from State's Attorney Weber came at the outset of his rebuttal, when he explained to the jury that defendant could have chosen to do what "80 to 90 percent of [d]efendants do in this country" and that is "they be honest [and] forthright," and "[t]hey go into the courtroom and they plead guilty."  Upon defense counsel's objection that the remark just attacked defendant's constitutional right to a jury trial (see U.S. Const., amend. VI), the trial court actually overruled the objection and allowed Weber to continue.  Thereafter, Weber repeatedly accused defendant of lying, accused defense witnesses of lying, explained why defendant and defense witnesses would lie, and why defendant and defense witnesses would continue to maintain their lie.  Weber explained to the jury that defendant "want[ed] to escape responsibility for his crime," "get back out on the street, back out after the verdict and yuck it up with the officers."  Weber then concluded by asking the jury to "send [defendant] a message" and say "enough of these lies."  In my view, Weber's rebuttal argument exceeded all bounds of reasonable and proper comment.  The argument was especially harmful due to Weber's strategic decision to wait until rebuttal to present it, so that defendant would have absolutely no method to substantively counteract the venom of Weber's comments before the jury retired to deliberate.  See 
People v. Sutton
, 316 Ill. App. 3d 874, 896 (2000).

Time and again Glen Weber has crossed the line of permissible conduct.  See 
People v. Slabaugh
, 323 Ill. App. 3d 723, 727-32 (2001); 
People v. Couch
, No. 2--01--0585 (2003) (unpublished order under Supreme Court Rule 23); 
People v. Doll
, No. 2--02--0564 (2003) (unpublished order under Supreme Court Rule 23).  In 
Slabaugh
, Weber repeatedly argued that defense witnesses were " 'lying,'  '[sat] down together and [got their] stories straight,' 'concocted' their defense, and 'creat[ed] a defense.' "  
Slabaugh
, 323 Ill. App. 3d at 729.  We noted that, despite a trial court's sustaining an objection and instructing the jury, when a prosecutor repeatedly attempts to make unfounded arguments, a defendant may still be prejudiced.  
Slabaugh
, 323 Ill. App. 3d at 731-32.  In reversing the defendant's conviction, we held that, in addition to his improper impeachment, Weber's "numerous improper arguments" deprived the defendant of a fair trial. 
Slabaugh
, 323 Ill. App. 3d at 732.

In 
Doll
, we noted in a special concurrence that Weber's comment that the defendant was a "rat in a maze" "served no other purpose than to arouse the passions of the jury."  
Doll
, slip op. at 15 (Gilleran Johnson and McLaren, JJ., specially concurring).  In the present case, Weber, while attempting to explain what a "prior inconsistent statement" was, argued:  "you see, because we have [d]efendants here that are always trying to, you know, they're like a 
rat in a maze
, you know, okay, let's see what it looks like in here--zoom, zoom, and try to get out of it."  (Emphasis added.) Just as in 
Doll
, this type of rhetoric served no purpose other than to arouse the passions of the jury and to denigrate defendant and the defense witnesses and is, therefore, highly improper.  See 
Doll
, slip op. at 15 (Gilleran Johnson and McLaren, JJ., specially concurring).

Apparently, our past admonitions to Glen Weber have gone callously and cavalierly disregarded as this case more than amply demonstrates.  I am further troubled that the majority's treatment of this issue does nothing to diminish the likelihood that such conduct will recur.  Though I am unable to convince my colleagues, I feel compelled to make a public record of Glen Weber's lack of professionalism and decorum.

In cases such as this, where prosecutorial misconduct has not been deterred through admonition or condemnation, the United States Supreme Court has stated that it "may well so seriously undermine the integrity of judicial proceedings as to support reversal under the plain-error doctrine."  
United States v. Young
, 470 U.S. 1, 33 n.16, 84 L. Ed. 2d 1, 24 n.16, 105 S. Ct. 1038, 1055 n.16 (1985) (Brennan, J., concurring in part and dissenting in part, joined by Marshall and Blackmun, JJ.).  Given the cumulative effect of Weber's comments and the nature of the evidence in this case, I believe that defendant was denied a fair and impartial trial.  See 
Slabaugh
, 323 Ill. App. 3d at 732.  The evidence of guilt can hardly be characterized as overwhelming; consequently, this is not a matter of harmless error.  A reversal and remand for a new trial free from the taint of Glen Weber is not only justified in this instance, it should be mandated.  I urge judges to vigorously guard against such improper argument and unprofessional conduct.

For these reasons, I respectfully dissent.

Filed:  March 29, 2004

SUPPLEMENTAL OPINION ON 
REHEARING

 JUSTICE KAPALA delivered the opinion of the court:

We allowed defendant's petition for rehearing 
that requested that we reconsider our holding as to defendant's second contention on appeal in light of our supreme court's recent decision in 
People v. Johnson
, 208 Ill. 2d 53 (2003).
 
  Defendant argues that 
Johnson
 mandates reversing his conviction and remanding the cause for a new trial because the acceptance of such "blatant misconduct" as occurred in this case is exactly what the supreme court warned against in 
Johnson
.  The State argues that the 
Johnson
 decision should not alter our holding that the improper comments by the prosecutor in this case were harmless.  After carefully considering the holding in 
Johnson
, as well as the parties' arguments regarding that decision, our resolution of this case has not changed.

Johnson
 involved three consolidated appeals where the State sought review of the appellate court decisions reversing DeAngelo Johnson's, Clyde Cowley's, and Jimmie Parker's convictions and remanding the causes for new trials.  Cowley and Parker were codefendants of Murray Blue, the defendant in 
People v. Blue
, 189 Ill. 2d 99 (2000).  These three defendants were charged with, among other crimes, the first degree murder of Chicago police officer Daniel Doffyn.  Cowley's trial was severed from Blue's and these two cases were tried simultaneously, but with separate juries.  
Johnson
, 
 
208 Ill. 2d at 60-61.
  Parker's trial took place several months later.  Johnson's trial involved charges resulting from a separate incident.  
Johnson
, 
208 Ill. 2d at 61.
  At the beginning of the 
Johnson
 decision
 the court wrote:

"These consolidated cases come before us in the wake of our decision in 
People v. Blue
, 189 Ill. 2d 99, 138-39 (2000), wherein a unanimous court held that the cumulative effect of prosecutorial misconduct and trial error had deprived the defendant of a fundamentally fair trial and thus warranted reversal notwithstanding overwhelming evidence of defendant's guilt. In 
Blue
, this court recognized that a pervasive pattern of error, engendered in the main by prosecutorial misconduct, had divested defendant of his right to a fair, orderly, and impartial trial, a substantial right that inures to a criminal defendant  ' "whether guilty or innocent." ' 
Blue
, 189 Ill. 2d at 138, quoting 
People v. Bull
, 185 Ill. 2d 179, 214 (1998).  In 
Blue
, where the trial was permeated by the presentation of emotionally charged evidence, and the prosecutors 'encouraged the jury to return a verdict grounded in emotion, and not a rational deliberation of the facts' (
Blue
, 189 Ill. 2d at 139), the members of this court, acting 'as guardians of constitutional rights and the integrity of the criminal justice system' (
Blue
, 189 Ill. 2d at 139), reversed and remanded for a new trial.  Disposition of the instant cases requires that we further delineate the dimensions of 
Blue
, applying the principles and standards of review utilized in that case."  
Johnson
,
 
208 Ill. 2d at 60.

Because the court in 
Johnson
 relied on its decision in 
Blue
, a detailed discussion of the holding in 
Blue
 is warranted
.  In 
Blue
 our supreme court held that cumulative errors deprived the defendant of his due process right to a fair trial (
Blue
, 189 Ill. 2d at 104) and reversed his convictions of, among other crimes, the first degree murder of Officer Doffyn
.  
The court identified four errors that occurred during the evidentiary portion of the trial.  The first error was the admission of Officer Doffyn's bloodied and brain-splattered uniform.  
Blue
, 189 Ill. 2d at 126.  The court concluded that the potential prejudice of the evidence outweighed its probative value and that its admission was aimed directly at the sympathies, or outrage, of the jury.  
Blue
, 189 Ill. 2d at 126.  The second error was the admission of the testimony of Officer Doffyn's father, which was not probative of the defendant's guilt or innocence but, rather, highlighted the poignancy of the Doffyn family's loss and suggested that the family's pain could be alleviated by a guilty verdict.  
Blue
, 189 Ill. 2d at 131
.  The third error was the admission of the irrelevant and emotionally charged testimony of Commander Joseph Delopez
 regarding the "star ceremony" where Officer Doffyn took his oath of office and the commander's explanation that Officer Doffyn's star is now displayed in the "honored star case" at Chicago police department headquarters.  
Blue
, 189 Ill. 2d at 133.  The fourth error was the prosecutors' hostile treatment of a witness, repeatedly 
interjecting their own testimony "through thinly veiled 'objections,' " and their violation of the advocate-witness rule.  
Blue
, 189 Ill. 2d at 135-36.

The 
Blue
 court also identified as errors two improper themes in the prosecutor's closing arguments.  The first was the argument that the jury's verdict should be a vehicle to vindicate the Doffyn family.  The court said that the argument that Officer Doffyn's father, mother, and child needed to "hear" from the jury was patently immaterial to the defendant's guilt or innocence and the State's reference to their loss was an erroneous appeal to the jury's emotions.
  
Blue
, 189 Ill. 2d at 130.  The second improper argument identified by the court was the prosecutor's argument that the jury should send a message in support of the police.  
Blue
, 189 Ill. 2d at 132.  The court concluded:

"[T]he trial court allowed the State to argue two emotion-laden themes to the jury,
 neither of which was probative of defendant's guilt for the several crimes charged against him.  The nakedly prejudicial nature of the arguments was intensified by parallel evidence which, perhaps by design, reinforced the tragedy of the loss suffered in this case by the police force and by the family of Daniel Doffyn.  Consequently, we hold that the trial court abused its discretion by permitting the jury to hear these arguments."  
Blue
, 189 Ill. 2d at 134.

Next, the court turned to the State's argument that, irrespective of any error, the evidence against the defendant was so overwhelming that absent the errors the outcome of the case would not have been different.  
Blue
, 189 Ill. 2d at 137-38.  
In response to this argument the court explained:

"[P]rejudice to a defendant's case is not the sole concern that drives our analysis of defendant's appeal: 'A criminal defendant, whether guilty or innocent, is entitled to a fair, orderly, and impartial trial' conducted according to law.  
People v. Bull
, 185 Ill. 2d 179, 214 (1998).  This due process right is guaranteed by the federal and state constitutions. [Citations.]

Additionally, when a defendant's right to a fair trial has been denied, this court must take corrective action so that we may preserve the integrity of the judicial process. [Citation.]  To determine whether defendant's right to a fair trial has been compromised, we employ the same test that this court uses whenever it applies the second prong of the plain error test.  134 Ill. 2d R. 615(a).  We ask whether a substantial right has been affected to such a degree that we cannot confidently state that defendant's trial was fundamentally fair. [Citations.]

*** [W]hen an error arises at trial that is of such gravity that it threatens the very integrity of the judicial process, the court must act to correct the error, so that the fairness and the reputation of the process may be preserved and protected.  Critically, the court will act on plain error 
regardless
 of the strength of the evidence of defendant's guilt."  (Emphasis in original.)  
Blue
, 189 Ill. 2d at 138.

In employing this test the court in 
Blue
 concluded:

"In this appeal, we hold that a new trial is necessary in order to preserve the trustworthiness and reputation of the judicial process
.  We do not disagree that the evidence proving defendant's guilt is overwhelming.  Nonetheless, regardless of the weight of the evidence, as guardians of constitutional rights and the integrity of the criminal justice system, we must order a new trial when, as here, we conclude that defendant did not receive a fair trial.

Each of the errors detailed above, in and of itself, casts doubt upon the reliability of the judicial process.  Cumulatively, we find that the errors created a pervasive pattern of unfair prejudice to defendant's case. [Citations.] The argument by State's counsel concerning the Doffyn family and the police encouraged the jury to return a verdict grounded in emotion, and not a rational deliberation of the facts.  Therefore, by allowing the State to suggest improper considerations to the jury, the trial court errantly allowed the jury to consider 'evidence' not relevant to defendant's alleged crimes.

Combined with the introduction of the dead officer's bloodied uniform, moreover, the errors assumed a synergistic effect.  In particular, if we view together the manner and duration of the uniform's display, the appeal to the jurors to demonstrate their gratitude to the police force, the introduction of Doffyn's oath of office and testimony that his star occupies an honored place at police headquarters, we discern an intent by the State to place the jury's responsibility as citizens on trial, as much as the State placed defendant on trial. [Citation.]

The State's overbearing conduct in pursuit of defendant's convictions was further demonstrated by the assistant State's Attorneys' behavior at trial.  The tendency of the prosecutors to interject editorializing objections unfairly negated evidence that may have been favorable to defendant.  The fact the objections were made--and sometimes sustained--by government representatives suggested that, because knowledgeable authorities found the testimony in question incredible, then the jury should reach the same conclusion.

Under these circumstances, defendant did not receive a fair trial. [Citations.]  In sum, the trial court allowed the guilty verdict to rest on considerations other than the evidence alone.  Accordingly, we reverse defendant's convictions and sentence and remand for a new trial."  
Blue
, 189 Ill. 2d at 139-40. 

Returning to our discussion of 
Johnson
, in reversing Cowley's and Parker's convictions, the court identified three instances of trial error that occurred in both trials: (1)
 
the admission and display of Officer Doffyn's bloodied and brain-splattered uniform, (2) the emotionally charged testimony of Officer Doffyn's father, and (3) the testimony of Commander Delopez that served only
 to highlight the ceremonies and oath associated with Officer Doffyn's service and duties as a police officer.  
Johnson
, 
208 Ill. 2d at 72.  The court in 
Johnson
 noted that Cowley was tried simultaneously with Blue and, consequently, with the exception of the prosecutors' violation of the advocate-witness rule, the identical evidentiary errors identified in 
Blue
 also occurred in Cowley's trial.  
Johnson
, 208 Ill. 2d at 85.

As to Parker's trial, the court identified five instances of improper argument by the prosecution: (1) remarks aimed at the sympathies of the jury implicitly asking the jury to send a message of support of law enforcement (
Johnson
, 
208 Ill. 2d at 75-76);
 (2) twice utilizing a metaphor in an argument on accountability likening the defendant to an animal, that is, " 'If you run with the pack, you share the kill.' "  (
Johnson
, 
208 Ill. 2d at 80); (3) mischaracterizing the evidence and the applicable law
, and suggesting that defense counsel was deceptive in his dealings with the jury 
(
Johnson
, 
208 Ill. 2d at 81);
 (4) two improper references to a school's proximity to the location where the defendants parked their car (
Johnson
, 
208 Ill. 2d at 83); and 
(5) references to Officer Doffyn's family that could be construed only as "strained attempts to invoke the jury's sympathy and thus influence its decision" (
Johnson
, 
208 Ill. 2d at 83
).  As to Parker's trial, the 
Johnson
 court
 concluded:

"
As in 
Blue
, we see in this case cumulative error and a pervasive pattern of unfair prejudice that denied defendant a fair trial and cast doubt upon the reliability of the judicial process.  See 
Blue
, 189 Ill. 2d at 139.  We note that the prejudice in this case, as in 
Blue
, was engendered in the main by prosecutorial misconduct.  As in 
Blue
, the coalescence of improper, emotion-laden evidence, and inflammatory argument obviously designed to exploit that evidence, created a synergism of parallel errors.  See 
Blue
, 189 Ill. 2d at 134, 139.  As in 
Blue
, a new trial is necessary in this case to preserve and protect the integrity of the judicial process, as 'the trial court allowed the guilty verdict to rest on considerations other than the evidence alone.'  See 
Blue
, 189 Ill. 2d at 138-40."  
Johnson
, 
208 Ill. 2d at 84.

When the court turned its attention to Cowley's trial, it identified the following instances of improper argument during the prosecutor's closing arguments: (1) unnecessary and irrelevant references to Officer Doffyn's surviving family members; (2) the same animal metaphor found objectionable in Parker's trial; (3) the same irrelevant reference to the proximity of a grammar school found objectionable in Parker's trial; (4) the same improper implied send-a-message-to-the-community theme that was utilized in Parker's trial; and (5) improperly casting the jury's decision as one between good and evil.   
Johnson
, 
208 Ill. 2d at 86-87.
  The court affirmed the reversal of Cowley's convictions for reasons similar to its affirmance of the reversal of Parker's convictions.  
Johnson
, 
208 Ill. 2d at 87.
 

In overturning the appellate court's reversal of Johnson's conviction, the court found all of the allegations of trial error (including the admission of gang affiliation evidence; the admission of testimony that allegedly apprised the jury that the defendant had taken and failed a polygraph; and the admission of the defendant's prior arrests and adjudications of delinquency) to lack merit (
Johnson
, 
208 Ill. 2d at 102-09) before finding 
that the prosecutor's comments in closing argument improperly suggested that Johnson was required to present evidence at trial.  
Johnson
, 
208 Ill. 2d at 115.
  The court went on to conclude, however, that the improper comments did not result in substantial prejudice to the defendant in that they 
were not a material factor in his conviction
.   
Johnson
, 
208 Ill. 2d at 115, citing 
People v. Williams
, 192 Ill. 2d 548, 573 (2000).  The 
Johnson
 court held further:

"[T]he prosecutor's comments, quite simply, did not result in substantial prejudice to Johnson under these circumstances, and thus, they do not warrant reversal of Johnson's convictions.  As there was neither cumulative error, nor a pervasive pattern of prosecutorial misconduct and related trial error, the appellate court's reliance upon 
Blue
 
was misplaced."  
Johnson
, 
208 Ill. 2d at 117.

We now turn to an analysis of the impact the decisions in 
Blue
 and 
Johnson
 have on the matter at bar.
  Ordinarily a prosecutor's improper comment will not result in the jury's verdict being disturbed on appeal unless the remark caused substantial prejudice to the defendant, taking into account the content and context of the comment, its relationship to the evidence, and its effect on the defendant's right to a fair and impartial trial.  
Johnson
, 
208 Ill. 2d at 115
, citing 
Williams
, 192 Ill. 2d at 573.  
Errors in closing argument must result in substantial prejudice such that the result would have been different absent the complained-of remark before reversal is required.  
Williams
, 192 Ill. 2d 
at 573.  In this case, because 
the evidence of defendant's guilt was overwhelming he was not prejudiced in the sense that the outcome of the trial would have been different but for the prosecutor's two improper remarks during the State's rebuttal closing argument.  However, as our supreme court noted in 
Blue
, there can be a special circumstance where a criminal defendant is deprived of a fair trial even when the evidence of his guilt is overwhelming, 
i.e.
, where his substantial constitutional right to a fair, orderly, and impartial trial conducted according to law has been affected to such a degree that his trial was not fundamentally fair.  In this special circumstance, the error is of such gravity that it threatens the very integrity of the judicial process and the court must act to correct the error so that the fairness and reputation of the process may be preserved and protected.  See  
Blue
, 189 Ill. 2d at 138.

In 
Johnson
 and 
Blue
 the court found that the defendants Blue, Cowley, and Parker were deprived of their right to a fundamentally fair trial due to the cumulative effect of prosecutorial misconduct and trial error, warranting reversal notwithstanding overwhelming evidence of their guilt.  
 
Johnson
, 
208 Ill. 2d at 84-85
;  
Blue
, 189 Ill. 2d at 138-39
.  In reversing Cowley's and Parker's murder convictions, the court 
followed its analysis in 
Blue
 where it held that the cumulative effect of prosecutorial misconduct and trial error deprived the defendant of a fair trial.  
Johnson
, 
208 Ill. 2d at 60
, citing 
Blue
, 189 Ill. 2d at 138.  The court found "cumulative error and a pervasive pattern of unfair prejudice that denied defendant a fair trial and cast doubt upon the reliability of the judicial process."  
Johnson
, 
208 Ill. 2d at 84
.  

Defendant's right to a fair trial, however, was not affected to the same extent that Blue's, Cowley's, and Parker's rights were in 
Blue
 and 
Johnson
.  Defendant's trial, like Blue's, Cowley's, and Parker's, involved improper argument by the prosecution in a case where the evidence proving defendant's guilt was overwhelming.
  However, defendant's trial was not like Blue's, Cowley's, or Parker's, where there was cumulative error demonstrating a pervasive pattern of unfair prejudice by the prosecution
.  Blue's trial involved four trial errors and the prosecution's argument of two improper emotion-laden themes.  Cowley's and Parker's trials contained three instances of trial error and at least five instances of improper argument by the prosecution. 
 In contrast, this defendant's trial contained only two improper arguments by the prosecutor during the State's rebuttal closing argument and not a single allegation of trial error. 
 

The improper arguments in this case were the negative comment regarding defendant's choice to exercise his constitutional right to have a jury trial, and the comment that defendant's purpose in lying was to avoid responsibility for his crime and to laugh at the police after he was back on the street.  Unlike Blue's, Cowley's, and Parker's trials, these arguments did not coincide with or parallel any emotion-laden evidence improperly admitted 
at trial.  Consequently, there was no synergistic or cumulative effect to the improper argument depriving defendant of a fair trial
.  Rather, like Johnson's trial, defendant's trial did not involve a pervasive pattern of prosecutorial misconduct and related trial error.  
Accordingly, we conclude that defendant's substantial right to a fair, orderly, and impartial trial conducted according to law was not affected to such a degree that we cannot confidently state that defendant's trial was fundamentally fair.  See 
Blue
, 189 Ill. 2d at 138.  We do not believe that the errors were so grave as to threaten the integrity of the judicial process such that we must act to correct the error so that the fairness and the reputation of the process may be preserved and protected.  See 
Blue
, 189 Ill. 2d at 138. 

Johnson
 and 
Blue
 hold that, even in a case where the evidence of the defendant's guilt is overwhelming, a defendant is deprived of his right to a fair trial 
where the prosecution makes improper arguments that are related to improperly admitted, emotion-laden evidence, resulting in a jury verdict grounded in emotion rather than rational deliberation of the facts.  
Johnson
, 
208 Ill. 2d at 84-85
; 
Blue
, 189 Ill. 2d at 138-39
.  
Defendant would have us reverse his conviction in a case where there was no trial error that related to the prosecution's improper arguments and where the evidence of his guilt was overwhelming.  We decline to so extend the holdings in 
Blue
 and 
Johnson
.  

The cumulative impact of multiple improper remarks by the prosecutor in closing argument may result in prejudice to a criminal defendant.  
People v. Whitlow
, 89 Ill. 2d 322, 341 (1982).  Such cases typically involve prejudice to a defendant in the ordinary sense such that absent the improper comments the outcome of the trial would have been different.  Defendant directs us only to 
People v. Ray
, 126 Ill. App. 3d 656 (1984), as authority for reversal of a conviction based on cumulative error consisting solely of improper argument by the prosecution in a case where the evidence of the defendant's guilt was overwhelming.  See 
Ray
, 126 Ill. App. 3d at 663.  The case at bar, however, is readily distinguished from 
Ray
.  As we concluded in our original majority opinion, the errors in 
Ray
 were much more pervasive than those in this case.  In 
Ray
 the improper remarks by the prosecutor included, but were not limited to: (1) an attack on the professional integrity of defense counsel, accusing him 16 times
 of lying, as well as trying to confuse and intimidate the jury (
Ray
, 126 Ill. App. 3d at 660); (2) a misstatement of the applicable law on the presumption of innocence (
Ray
, 126 Ill. App. 3d at 661); (3) an impermissible comment on the defendant's failure to testify, which violated his rights under the fifth and fourteenth amendments to the Constitution 
(
Ray
, 126 Ill. App. 3d at 661); 
(4) the impermissible intimation that there existed inculpatory evidence that was rendered inadmissible as a result of defense counsel's objections (
Ray
, 126 Ill. App. 3d at 661); (5) 
improper comments suggesting that witnesses were afraid to testify because the defendant had threatened or intimidated them (
Ray
, 126 Ill. App. 3d at 662); 
(6) an improper intimation that the defendant had a prior criminal history (
Ray
, 126 Ill. App. 3d at 662); and (7) numerous improper comments suggesting that the defendant had manipulated his constitutional rights to escape conviction (
Ray
, 126 Ill. App. 3d at 662-63). 
 
Unlike the prosecutor's closing argument in 
Ray
, the prosecutor's two improper comments during closing argument in defendant's trial did not "read like a veritable hornbook of 'do nots,' " nor did they create "an atmosphere inimical to the even-handed dispensation of justice and thus result[ ] in prejudice to defendant."  
Ray
, 126 Ill. App. 3d at 663, 659-60.

Additionally, defendant argues that 
Johnson
 mandates a finding that several comments made by the prosecutor that we deemed proper in our original majority opinion were in fact impermissible.   We disagree.

First, defendant points out that 
Johnson
 clarified that it is improper for the State to accuse defense counsel of trying to confuse the jury "[u]nless predicated on evidence that defense counsel behaved unethically."  
Johnson
, 208 Ill. 2d at 82.  Defendant maintains that, because there was no indication that defense counsel behaved unethically, the majority erred when it concluded that such argument was proper in light of defense counsel's attempt to use minor discrepancies to discredit the State's evidence.

In this case defendant was charged with driving under the influence of alcohol (DUI) (625 ILCS 5/11--501(a)(1), (a)(2) (West 2000)) and filing a false police report of the theft of a motor vehicle (625 ILCS 5/4--103(a)(6) (West 2000)).  There was little dispute that the elements of DUI were established after defendant admitted during his trial testimony that his blood-alcohol content was over 0.08 and there was testimony that defendant admitted to driving the car in an attempt to get it out of the snow.  As to the charge of filing a false police report of the theft of a vehicle, the State was required to prove that the report was false (see 625 ILCS 5/4--103 (a)(6) (West 2000)).  As the defense took the position that the report to the police was not false because someone really did steal defendant's car, the prosecution was certainly entitled to argue to the jury that defendant's trial testimony so indicating is a lie.  After so arguing, the prosecutor made the following remarks:

"[T]he defense wants to say, 'Well, this is a problem and this is a problem and this is a problem' because they don't want you to put all the facts and your common sense together, and amazingly they've sat here and argued for a period of time about two issues that I can't believe they're even talking about and that is intoxication.

See, and that's, of course, that's the defense; that's the tactic, right.  Well, Officer Craft did this and the machine did that and blah-blah, blah-blah, blah.  Folks, that is not even an issue in this case.  I asked him flat out, 'Were you over the legal limit?' 'Yeah, oh yeah.'  'Beyond .08?'  'Yeah.'  What do we need a machine for?  But see, that's the way.  That's the tactic, of course, you know let's get back in the jury room and let's, convince [
sic
] about the machine and let's convince [
sic
] about this and dah-dah dah-dah dah, and pretty soon there's 12 of you and there's reasonable doubt all over the place because your thinking about all sorts of things that have nothing to do with the facts and circumstances and hard evidence in this case.

Folks, this is not an issue in this case.  When the Defendant confesses on the witness stand to being under the influence and above .08, that is not an issue.  Okay?"

Rather than an accusation that defense counsel was trying to confuse the jury, by these remarks the prosecutor was merely making the point to the jury that portions of defense counsel's closing argument focused them on an issue that, as a result of defendant's trial testimony, was not in dispute.  The prosecutor was calling the jury's attention to defense counsel's tactic of focusing them on the calibration of the Breathalyzer machine when, irrespective of the accuracy of that machine, defendant had admitted that his blood-alcohol content was over the legal limit.  This was not improper argument.

Next, defendant claims for the first time in his petition for rehearing that 
the prosecutor improperly referred to him as a "rat" in his rebuttal closing argument.  Parties may not argue new points in a petition for rehearing (
177 Ill. 2d
 R. 341(e)(7)
;  
People v. Wright
, 194 Ill. 2d 1, 23 (2000)
) and, therefore, this claim is waived.  Defendant maintains that his opening brief  "recognized" this remark as one of the numerous improper comments made by the prosecutor.  Although defendant's opening brief stated that "[a]ccording to Weber, criminal defendants are 'like rats in a maze' because they 'try to get out of it,' " "recognizing" the remark is not the same as arguing a point for purposes of Supreme Court Rule 341(e)(7).  177 Ill. 2d R. 341(e)(7). 
 Defendant did not explain why the remark was improper or cite to any authority indicating that the comment was improper as was required by  Rule 341(e)(7).  See 177 Ill. 2d R. 341(e)(7).  
Therefore, defendant is not permitted to raise this contention in his petition for rehearing.

Next, defendant argues that 
Johnson
 mandates reversal based on the prosecutor's comment that indicated that defendant and defense counsel encouraged defendant's wife to lie on his behalf by claiming that she did not remember what she told the police about the incident on the night in question.  As we noted in our original majority opinion, it is not clear that the prosecutor made such a claim.  In fact the statement "bringing in [the persons who made the statements] and having them say 'I don't remember' " was made in a general way in explaining the need for the prior inconsistent statement exception to the hearsay rule.  There was no specific reference to defendant or to his counsel.

Defendant cites a portion of the 
Johnson
 decision where the court pointed out an improper remark by the prosecutor suggesting that the jury should be suspicious of defense counsel because he asked more questions of the prospective jurors during 
voir dire
 than did the State.  The 
Johnson
 court concluded that 
 "[a]lthough the prosecutor did, immediately thereafter, acknowledge that it was not improper to ask additional questions, the ambiguity of the trial court's ruling on the objection may well have reinforced the impression of defense deception left by the State's earlier comment."  
Johnson
, 208 Ill. 2d at 82-83.  Presumably, defendant is arguing that a prosecutor cannot correct an improper comment where the trial court does not sustain the defendant's objection to that comment.  Unlike the prosecutor in 
Johnson
, however, the prosecutor in this case was not trying to correct an obvious impropriety like an insinuation that defense counsel's deceptiveness was demonstrated by his  asking too many questions during 
voir dire
.  Rather, the prosecutor in this case was clarifying an ambiguous remark that drew an objection.  The complained-of remark could have been heard as a general explanation for the substantive use of a witness's prior inconsistent statement or, as defendant characterizes the remark, an accusation that defendant and his counsel encouraged defendant's wife to lie.  Under such circumstances, the prosecutor's comments following the trial court's overruling of the objection were not a correction of an obvious improper remark but, rather, a clarification of what was meant by the remark, that is, that he did not mean to suggest that defense counsel and defendant put defendant's wife up to lying.

We need to address one other point raised by defendant in his petition for rehearing.  Defendant takes the position that because the prosecutor in this case repeated the same type of misconduct during defendant's trial as this court had previously admonished him to be improper, the improper remarks made during defendant's trial were intentional and deliberate.  We disagree.

Defendant's reference to this court's prior admonitions to this prosecutor can mean only the admonishment in 
People v. Slabaugh
, 323 Ill. App. 3d 723 (2001).  The two Supreme Court Rule 23 orders referred to in the dissent to the majority opinion did not contain admonishments and were both handed down after defendant's trial.  Consequently, any lesson taught in those dispositions  could not have been ignored by the prosecutor during defendant's trial.  

The 
Johnson
 court did note that "a pattern of intentional prosecutorial misconduct may so seriously undermine the integrity of judicial proceedings as to support reversal under the plain error doctrine" (
Johnson
, 
208 Ill. 2d at 64
) and explained that its decision "signal[ed] [its] intolerance of pervasive prosecutorial misconduct that deliberately undermines the process by which we determine a defendant's guilt or innocence" (
Johnson
, 
208 Ill. 2d at 117
).
  However, nowhere in 
Johnson
 did the court indicate that prior admonishments to the prosecutor regarding his improper comments in other cases are appropriately considered in deciding if a pattern of intentional misconduct exists in the trial being reviewed.  In any event, we do not believe that the admonishment contained in 
Slabaugh
 that "[w]e trust that errors will not be repeated on retrial" (
Slabaugh
, 323 Ill. App. 3d at 728) establishes that the two improper comments made in this case were intentional or calculated to 
deliberately undermine defendant's right to a fair trial.  The two improper comments during the State's rebuttal closing argument hardly constitute a pattern of intentional misconduct like that present in the trials of Cowley, Parker, and Blue, where multiple trial errors during the evidentiary phase of those trials paralleled with multiple improper remarks during the State's closing arguments deprived those defendants of fair trials.  

Additionally, we believe that the prosecutor's remarks concerning defendant's choice to exercise his constitutional right to a jury trial 
constituted a
 miscalculated response to a remark by defense counsel that the prosecutor misunderstood. 
 In response to defense counsel's statement during closing argument that once defendant chose to assert his right to plead his innocence he had no choice but to go to trial, the prosecutor said:

"But Mr. Nack begins his argument by asking you: there's no other choice, there is no other choice for this Defendant, right?  No other choice.  He's got to take this case to trial and profess his innocence.  Well, not quite.  Okay?  There is something that about 80 to 90 percent of Defendants do in this country and that is they be [
sic
] honest, forthright.  They go into the courtroom and they plead guilty.

MR. NACK:  Objection. That's grounds for a mistrial, Judge.

THE COURT: Overruled.  Go ahead.

MR. WEBER: It happens everyday.  You hear about it all the time. Right?

You know what? That story I gave was pretty stupid and I think it's time for me to accept responsibility for my stupidity in driving drunk and filing a false police report and I'll plead guilty.

MR. NACK:  Objection, Judge.  That is improper argument.  He has the constitutional right to a jury trial.  It's improper argument.

THE COURT: It's argument; it's overruled.  Go ahead."

 The prosecutor obviously misunderstood defense counsel's argument because he clearly contended that defense counsel claimed that defendant's only option was to go to trial.  Defense counsel made no such comment and, absent invitation, a negative comment about a defendant's exercise of his constitutional rights is improper (
People v. Mulero
, 176 Ill. 2d 444, 462 (1997)).  Consequently, the prosecutor's comments were improper and the trial court should have sustained defense counsel's objections to them.  However, the fact that the improper remarks were made in response to a point made by defense counsel that was misconstrued by the prosecutor indicates that there was no preconceived plan constituting an intentional pattern of misconduct or any deliberate attempt to deprive defendant of a fair trial as was evident in 
Johnson
 and 
Blue
.

Nevertheless, our holding in this case should not be interpreted as approval of the prosecutor's improper remarks, which our supreme court has aptly observed have become far too common in criminal trials.  We simply hold that in this case the two improper comments by the prosecutor did not deprive defendant of a fair trial.  We join Justice Hutchinson in urging that trial judges vigorously guard against improper argument and unprofessional conduct.

Affirmed.

JUSTICE BYRNE, specially concurring:

While I agree with the majority’s conclusion that despite the misconduct of the State's Attorney, defendant in this case was not denied his right to a fair trial, I reject the conclusion that if there is overwhelming evidence of guilt the prosecutor may play fast and loose with a defendant's rights.

If, as in the majority opinion, we accept the fact of prosecutorial misconduct and then look to the underlying evidence of guilt to determine whether such conduct should be sanctioned, we, in fact, put the cart before the horse.  The State has a greater burden than merely seeking convictions.  If prosecution of felonies and misdemeanors becomes a game of "what can I get away with" rather than presenting evidence and making comment within the framework of seeking justice and fairness for all, the justice system has lost sight of its legitimate goals.

I believe that, while the majority reaches the correct result based on the cases cited, the dissent is correct in arguing that prosecutorial misconduct cannot be allowed in any case and that when we affirm convictions such as the one in the instant case, we send a message that such conduct will be allowed in certain circumstances.

So, while I concur with the majority's result herein, I think that we must continue to examine the issue of when prosecutorial misconduct should be sanctioned and what the threshold for reversal of convictions procured in such an environment should be.  To hold that prosecutorial misconduct is permissible when there is overwhelming evidence of guilt is not consistent with the goals and ideals of our justice system.

JUSTICE HUTCHINSON, dissenting:

I continue to dissent.  As I stated in my previous dissent, I believe that defendant was denied a fair and impartial trial due to the prosecutorial misconduct that occurred during State's Attorney Glen Weber's rebuttal closing argument.  The 
Johnson
 decision does nothing short of further cementing my belief that defendant is entitled to a new trial.  In 
Johnson
, our supreme court applied the principles and standards of review utilized in 
Blue
 to determine whether the cumulative effect of alleged prosecutorial misconduct and trial error had deprived the defendants of a fundamentally fair trial warranting reversal despite "overwhelming evidence" of their guilt.  
Johnson
, 208 Ill. 2d at 60.

In the present case, the trial was all but over.  The jury was to hear no more evidence.  The jurors had already heard a closing argument from Weber and a responsive closing argument from defense counsel.  Their attention turned back to and focused on Weber.  Weber approached and began his rebuttal closing argument.  The stage belonged to Weber.  Free from interruption, free from any surresponse by defense counsel.  Whereupon Weber proceeded to attack defendant's constitutional right to a jury trial (see U.S. Const., amend VI) and arguably his presumption of innocence (see Illinois Pattern Jury Instructions, Criminal, No. 2.03 (4th ed. 2000)) when he told the jury that defendant could have chosen to do what "80 to 90 percent of [d]efendants do in this county" and that is "they be honest [and] forthright," and "[t]hey go into the courtroom and they plead guilty."  Next, Weber attacked the veracity of defendant and defense witnesses (see 
Slabaugh
, 323 Ill. App. 3d at 729).  He then used a metaphor to liken defendant to an animal, a "rat in a maze."  This was clearly improper.  See 
Johnson
, 208 Ill. 2d at 80, citing 
People v. Johnson
, 119 Ill. 2d 119, 139 (1987).  Weber concluded by asking the jury to "send [defendant] a message," yet another exhortation questioned in 
Johnson
.  See 
Johnson
, 208 Ill. 2d at 86-87.

One cannot unring a bell.  See 
People v. Rivera
, 277 Ill. App. 3d 811, 819 (1986); see also 
People v. Brown
, 27 Ill. App. 3d 891, 897-98 (1975), citing 
Maness v. Meyers
, 419 U.S. 449, 460, 42 L. Ed. 2d 574, 584, 95 S. Ct. 584, 592 (1975).  In this case, though, the jury was subjected not to a bell but to a constant cacophony of prosecutorial misconduct of constitutional proportions.  In my view, Weber's rebuttal closing argument created a " 'negative synergistic effect, rendering the degree of overall unfairness to defendant more than that flowing from the sum of the individual errors.' "  
Johnson
, 208 Ill. 2d at 65, quoting 
People v. Hill
, 17 Cal. 4th 800, 847, 952 P.2d 673, 699, 72 Cal. Rptr. 2d 656, 682 (1998).  Because all of these errors occurred during rebuttal, Weber's vitriolic words were the last the jury heard from either party before retiring to deliberate.  Therein lies the real prejudice.  See generally 
Thirty-Second Annual Review of Criminal Procedure:  Prosecutorial Misconduct
, 91 Geo. L.J. 556 (May 2003) (providing an overview of improper comments by prosecutors).

This case clearly illustrates the problem of "prosecutorial recidivism," that is, "the tendency of the same prosecutor or office to engage in misconduct repeatedly, even in the face of admonishments from the court."  P. Speigelman, 
Prosecutorial Misconduct in Closing Argument:  The Role of Intent in Appellate Review
, 1 J. App. Prac. & Process 115, 120 (1999).  Our past admonitions to Weber and his characterization of another defendant in another case as a "rat in a maze" (see 
Doll
, slip op. at 15 (Gilleran Johnson and McLaren, JJ., specially concurring)) lead me to conclude that Weber's conduct in the present case consisted of nothing less than "a calculated course of action to play upon and incite the emotions *** of the jury."  
People v. Williams
, 161 Ill. 2d 1, 81 (1994).

Rather than discussing the quantum of evidence presented supporting defendant's guilt and applying waiver principles, I submit that the majority should have invoked the plain-error rule to review all of defendant's allegations of prosecutorial misconduct that were not properly preserved.  See 
Johnson
, 208 Ill. 2d at 64.  Waiver is a limitation on the parties, not the court.  
Blue
, 189 Ill. 2d at 127, citing 
People v. Kliner
, 185 Ill. 2d 81, 127 (1998).  I believe that defendant's interest in receiving a fair trial and our overall interest in preserving the integrity of the judicial process warranted excusing the procedural default.

I further believe that Weber's misconduct during his rebuttal argument viewed in its entirety was sufficient in and of itself to require reversal.  I believe that defendant was deprived of what he was entitled to receive and what the State was constitutionally required to provide:  a fair trial.  For the reasons set forth in my original dissent and for these reasons now, I continue to respectfully dissent.